Johnson, J.
A former judgment in favor of the plaintiff in error was reversed and reported in Himrod Furnace Co. v. C. & M. R. R. Co., 22 Ohio St. 451. For a full statement of the pleadings, and of the points there decided, we refer to that report. It is sufficient for our present purpose, to say, that it was there held, that certain evidence was admissible to prove the alleged contract, and that said contract, if proved, was not void for want of mutuality of obligation between the parties nor for want of a sufficient consideration.
On the last trial, this contract was proved as alleged, and a verdict and judgment resulted which it is sought to reverse. This judgment, as to all overcharges paid by the plaintiff below to the plaintiff here, has, after a careful consideration of all the points made, been affirmed, a remittitur of all overcharges paid to others than the plaintiff in error having been entered. Among the errors assigned is one we have reserved for report.
It is now claimed, that this contract for transportation, though not void for want of mutuality, nor for want of a sufficient consideration to support it, is so for want of capacity of the corporation to make it. It is insisted with earnestness and marked ability that the laws of Ohio do not confer upon the directors of a railway corporation the power to make such a contract for a term of years which will bind that or any future board of directors. The claim is, that “ the franchise conferred upon railway corporations as the agents of the state, *326 for the operation of a public highway, to transport persons and property and to receive a reasonable compensation for it, was given to be used for the equal benefit of those to whom it equally belonged, and not to be abused; to be preserved in all its integrity, for me from time to time, as the exigencies of the corporation and the public good might require, and not to be frittered away by alienation or contract in favor of individuals or classes, or to build up monopolies or other interests .... To hold that this judgment and discretion of the directors’ in performing their duties, under the authority of this franchise, might be suspended for periods of ten years in succession, would certainly be attended with strange if not disastrous consequences.” (Judge Ranney’s brief.)
The substance of this claim is, that a board of directors of a railway corporation have no authority to bind the corporation for a term of years, or for any future time, however short, which in any manner abridges or suspends the discretion of the same or any future board, to fix rates such as “ the exigencies of the corporation and the public good might require,”—in short, that such a contract is ultra vires, notwithstanding the contract, when made, is based upon a sufficient and valuable consideration received by the corporation, and was in all respects fair and reasonable.
In the discussion of this proposition, it is of the first importance that it should be carefully distinguished from other questions of somewhat kindred nature, which the learned counsel have blended with it in the argument.
1st. It is distinguishable from that class of contracts sometimes made by common carriers, which are held to be void because they unjustly discriminate in favor of one shipper over another. The invalidity of such contracts arises from the fact, that it is against public policy to. allow any common carrier, whether an individual, or a corporation, to give an illegal preference to one shipper over another, for the same kind and amount of service. When such is the nature of the contract for transportation, its validity or invalidity doss not depend upon the individual or corporate character of the carrier, but upon the provisions of the contract itself, unless the terms of the *327 charter of the corporation limits its power to contract in this respect.
These contracts are not enforceable because they are against public policy, and not because they are ultra vires. An act of a corporation is ult/ra vires when it is beyond the chartered powers of the corporation, and is therefore said to be void. It may also be void because it is against public policy as declared by statute, or the fundamental law, or for any reason that would make a like contract of an individual, void. In the case before us, the court charged the jury as to what constituted an invalid contract on account of discrimination. That.charge was not prejudicial to the plaintiff in error. The jury found as a fact that this contract was not obnoxious to this objection. A careful review of the evidence satisfies us that the jury were warranted in so finding. This eliminates from the problem the question of the invalidity of this contract on the ground of discrimination.
2d. That such a contract is not void for want of a sufficient consideration to support the promise of the railroad company, nor for want of mutuality of obligation between the parties, was settled in this case, when it was here before. Himrod Furnace Co. v. C. & M. R. R. Co., 22 Ohio St. 451. We see no reason to disturb that decision.
3d. This is not a question of the abuse, by the board of directors, of the judgment and discretion vested in them by law, to contract for transportation. Neither the stockholders nor the public authorities are here complaining. It is not even insisted that the rates fixed by the contract are not reasonable and advantageous to the railroad company, nor that the board of directors did not act in perfect good faith.
In view of the evidence and the verdict, we have the right to assume that the contract was to the mutual advantage of both parties, that it was made in good faith, and that its performance for the whole term would not have been injurious to the inter•est of the stockholders, or in any way suspend or abridge the powers conferred to discharge the duties the corporation owed to the public as a common carrier, to carry for all on equal terms.
4th. Neither does the length of time the contract has to run, *328 affect the question of power. A contract for a less time than ten years, or indeed for any time, is invalid if there is no' corporate power to make time contracts for transportation. If the power exists to make a time contract for transportation, the discretion thus vested may be abused to the prejudice of the corporation and its stockholders. For such abuse of vested powers, the law furnishes a remedy in proper cases, as in other cases of a breach of trust by boards of directors of corporations. So it might by such a contract grant a monopoly to one shipper, and thus render it incapable of carrying for others. It is not claimed that the existence of this contract impairs the capacity of the company to carry for others as its public duty requires. We are thus brought to the question, whether the board of directors had the power or capacity to make a contract to transport property for a fixed time. This depends upon its chartered powers.
The Cleveland & Mahoning Railroad Company was chartered February 22, 1848, with authority to construct a railroad from Cleveland to Warren, Trumbull county, with the right to extend it east to the state line. The company was to have “ all the powers and be subject to all the restrictions and provisions of the ‘ act regulating railroad companies,’ passed February 11, 1848.” 1 Ohio Railway Rep. 545. By the act of February 11, 1848, this corporation was endowed with a corporate capacity “to sue and be sued, plead and be impleaded, defend and be defended, contract and be contracted with, acquire and convey at pleasure all such real and personal estate as may be necessary and convenient to carry into effect the objects of the incorporation; . . . and do all needful acts to carry into effect the object for which it was created; and such company shall possess all the powers and be subject to all the rules and restrictions provided by this act, except so far as modified by the special act incorporating the saíne.”
By section 7, the directors are vested with the exercise of these corporate powers, and are to “transact all business of the' corporation.”
By section 12, “ such corporation may demand and receive for the transportation of passengers on said road, not exceed *329 ing three and one-half cents per mile, and for the transportation of property not exceeding five cents per ton per mile, when the same is to be transported a distance of thirty miles or more, and in case the same is transported for a less distance than thirty miles such reasonable rate as may be from time to time fixed by said company.” 1 Ohio Railway Report, 14-17.
In this act the power “ to contract and be contracted with, . . . and to do all needful acts to carry into effect the objects for which it was createdclearly embraces the power to transport pei’sons and property as a common carrier for hire.
This obviously includes the right to charge and collect compensation, at a rate not exceeding the maximum fixed by section 12 of the statute.
Substantially the same provisions are found in the general act of 1852, relating to railroads. The object for which the charter was granted was to construct, -maintain and operate a railroad for the individual benefit of the stockholders, as well as for the public benefit. Here, there is an express power to make contracts for transportation, and to agree with the shipper upon rates. The only limitation which the statute imposes is that the rates shall not exceed the maximum fixed by section 12 of the act.
Every undertaking to carry persons or property rests upon contract, express or implied. It may be the result of an express contract, agreed upon by the parties, or it may arise by implication of law. In either case' it is a contract which gives the company the right to demand and receive compensation.
The power that exists to make a contract for a single shipment, will authorize a contract lor a series of shipments or for a period of time.
Whether the rates be fixed by a schedule and posted up, or by separate contract in each case, is not material. In either way, it is a lawful exercise of the power to contract with the shipper for a compensation.
We fully agree that this corporation is the creature of the law, and that, being such, “ it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence” (Dartmouth *330 College v. Woodward, 4 Wheat. 518, 636); and that grants of power to individuals to construct, maintain and operate a railroad, as a body corporate, which are primarily designed for the profit of its stockholders, should receive a strict construction. “ The exercise of the corporate franchise, being restrictive of individual rights, cannot be extended beyond the letter and spirit of the act of incorporation.” Beaty v. Knowles, 4 Pet. 162. This does not exclude the right to use any appropriate means to carry into effect the powers expressly granted, or necessarily implied. There is a clear line of distinction between cases involving the mode of exercising granted powers, and those where the power to do the act is wanting. If the power to do an act is clearly conferred, either by express grant or by necessary implication, the corporation may adopt any appropriate means, not expressly forbidden. The mode or manner in which the act shall be done, is, in the absence of limitations imposed by the charter, left to the sound discretion of the corporate authority.
In this case, the power to make contracts for transportation cannot be questioned.
Whether such contracts shall be made by a published tariff of rates, or as expressed in the bill of lading which accompanies each shipment, or by a general contract with each shipper for a longer or shorter term, rests, we think, in the sound discretion of the board of directors. If either method is resorted to it is but the exercise of a' power expressly granted, which is necessary and essential to carry out one of the leading objects of the corporation, namely, to earn money for the proprietors. If this were not so, railroad corporations would possess immunities that no individual has.
A contract made to-day, might be repudiated to-morrow, or even while goods are in transit upon agreed rates, under the plea that the exigencies of the corporation require it. If such a principle be sound no reason exists why it should not apply to all executory contracts which the corporation is authorized to make, as well as to contracts for transportation.
In thus holding, we do not controvert the principle that the company cannot alienate its franchise or property, which are *331 essential to tlie performance of any duty it owes to the public. This corporation is clothed with powers and franchises of both a public and private nature. It could not, without express authority, divest itself of its power to perform all obligations it owed to the public or to the state. It could not do this either by mis-user, non-usel', or by contract, without liability to the state, or to those having the right to demand their performance. As a private corporation, it also possessed powers and franchises, such as the power to contract and be contracted with, and generally to do all acts needful to carry out the object of the incorporation. Included in this class of powers is that of demanding and receiving compensation for transportation. Its power to contract, in this respect, is limited by the maximum rate fixed by statute, also by the rule, above stated, that it cannot impair its ability to perform its public duties. To make a contract for transportation binding for a greater time than a single shipment, is within the scope of its author ity, if it is otherwise valid ; and if the power to perform all the duties it owes to the public are not impaired or abridged.
An examination of the cases cited and relied on in the argument, will show that they are all cases where it has been held there was a want of power to do the act, and not where the exercise of a discretion in doing an act is expressly authorized.
Thus, in Thomas v. West Jersey R. Co., 101 U. S. 71, it was held, that a lease by a railroad company of all its road, rolling-stock and franchises, for which no authority is given in the charter, is ult/ra vires and void ; that the general power to contract with other companies for the mutual transfer of goods and passengers, did not include the power to lease. It was further'held, that any contract, by which the company renders itself incapable of performing its duties to the public, or which attempts to absolve itself from its obligation, without the consent of the state, violates its charter, and is forbidden by public policy.
In this we concur, but cannot see its application to the case at bar. It is not even pretended that this railroad has, by this contract, rendered itself incapable of performing its duties to *332 the public, or that it has attempted to absolve itself from any obligation to tbe state, or to the public as a public carrier, under the act of incorporation.
State v. Consolidation Coal Co., 46 Md. 1, was decided on the same principle, where it was held, that the power to sell and convey all its property and franchises, and thus escape its obligations to the public, could only be conferred by express legislation. To the same effect are Black v. Delaware & Raritan Canal Co., 24 N. J. 455; s. c., 22 N. J. Eq. 130; Middlesex R. R. Co. v. Boston & Chelsea R. R. Co., 115 Mass. 347; Richardson v. Sibley, 11 Allen, 65.
These, and other cases that might be cited, rest upon the principle that the corporation owes duties to the public ; that the franchises granted to it, impose a trust, and that without express authority, it cannot disable itself from the performance of these duties, or the faithful execution, of the trust.
For aught that appears, or is even suggested, the plaintiff in error has performed all its corporate duties to the public, and has faithfully discharged the trust reposed in it by the grant of its franchises, to the satisfaction of the state and of the public. The existence of this ten-year contract has not, so far as we are advised, incapacitated the corporation from the performance of all such duties and trusts.
Neither the state, nor the public, who are benefited by this public highway, nor the stockholders, are complaining. Why should the corporation be allowed to absolve itself from a contract, fairly made, of mutual obligation and advantages, when made, supported by a valuable consideration, received in great part, and free from any discrimination, sim ply because it may prove less profitable than was anticipated ?
What effect such a contract would have on the rights of other shippers we have not considered, as they are not here complaining. We hold that the making of this contract was in the exercise of the sound discretion of the board of directors, granted to them in the charter of the company, and is not ultra vires and void.

Judgment affirmed.

[This case was decided before Longwortit, J., came on the bench.]