# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1876.

STATE OF MARYLAND *vs.* THE CONSOLIDATION COAL COMPANY.

*Scire facias against a Corporation for a forfeit of its Charter—How the authority to institute such proceeding may be conferred—Constitutional law—Construction of Act of Assembly—Effect of an unconstitutional provision in a Charter created by Act of Assembly—Question as to the power of a Corporation to convey its property and franchises by Deed without express authority to do so, and whether such authority is contained by implication in a power to purchase conferred upon the grantee under such Deed—The charge of excessive tolls by a Corporation, under a mistaken construction of its powers, no ground for a forfeiture of its Charter.*

While it is clear that proceedings by *scire facias,* or otherwise, against a corporation for the forfeiture of its charter, cannot be maintained, except by the sanction and authority of the Legislature, a special Act of Assembly for this purpose is not required.

It is competent for the Legislature, instead of passing a special Act authorizing such proceedings to be instituted in a particular case, by a general law to authorize suits for this purpose to be instituted at the instance of private parties, as was done by the Act of 1818, ch. 177, sec. 4, codified in Art. 12 of the Code; or to confer the power upon the Governor to cause the proceeding to be instituted in his discretion, whenever he may consider the

public interests so require; and this power has been conferred by sec. 176 of the Act of 1868, ch. 471.

The Act of 1860, ch. 265, incorporating The Consolidation Coal Company, by its 6th section, conferred on said company the right to construct, locate and maintain such railroad or railroads as the Directors thereof might deem necessary for the convenient transaction of its business, and invested it with all the rights of *eminent domain* in the survey, location and construction of such railroads, which had been conferred upon the Baltimore and Ohio Railroad Company, by its Act of incorporation, 1826, ch. 123, or by any supplement thereto. Upon a proceeding by the State of Maryland to procure a forfeiture of the charter of said Consolidation Coal Company; HELD :

1st. That the Act of 1860, ch. 265, must be interpreted in connection with and in subordination to the provision contained in the Constitution of 1850, Art. 3, sec. 46, and also, in the Constitutions of 1864 and 1867, which declared that the Legislature should enact no law authorizing private property to be taken for public use, without just compensation being first paid or tendered; and the charter of the Baltimore and Ohio Railroad Company to which it refers, must in this respect be construed as consistent with the Constitution, its words being clearly susceptible of such construction.

2nd. That if it were otherwise the particular provision would simply be inoperative, in so far as it might be inconsistent with the Constitution, but would not render the whole Act void.

The Cumberland and Pennsylvania Railroad Company was chartered by the Act of 1849, ch. 469. It was authorized to construct a railroad from Cumberland to some suitable point on the dividing line, between the States of Maryland and Pennsylvania, and to make lateral roads in any direction branching from its main line. By *sec.* 21, full right and privilege was reserved to citizens and corporations of the State to connect with said railroad, and by *sec* 22, the Legislature reserved *to itself the right to alter, repeal or annul this Act at pleasure.* By its charter it was authorized to charge at specified rates for freight and passengers. By the Act of 1868, ch. 334, these rates were reduced. This amendment to the charter was accepted by the company, and it continued its business operations in accordance therewith till the spring of 1876, when the Legislature then in session, by the Act of 1876, ch. 64, amended the charter by a further reduction of the rates of charge. This Act was approved by the Governor on the 14th of March, 1876; while it was pending, a deed of the company dated March 2nd, 1876, was executed, conveying to the Consolidation Coal Company its railroad and all its property of every description, with its privileges and franchises;

---

The State *vs.* Consolidation Coal Company.

---

and the latter company having taken charge and possession of the said railroad and property under the deed, .continued to conduct the same as its own, claiming the right to charge for transportation thereon the rates allowed by its own charter, which were in excess of the rates allowed by the Act of 1876, ch. 64; and executed and received rates greater than those allowed by that Act. On a proceeding by the State to procure a forfeiture of the charter of the Consolidation Coal Company; HELD:

1st. That the Cumberland and Pennsylvania Railroad Company was not authorized to execute said deed of the 2nd of March, 1876, without the consent of the Legislature.

2nd. That such consent was not contained in the charter of the Consolidation Coal Company, (1860, ch. 265,) by which the latter company was authorized *"to purchase,* lease, hold and maintain any other railroad or railroads, or other roads or ways, water-courses or channels of transportation, already constructed or hereafter to be constructed, with all the rights, powers and franchises connected therewith."

3rd. That the said Act was not designed, nor can it be properly construed to be an amendment of the charter granted to the Cumberland and Pennsylvania Railroad Company, which alone must be looked at in order to ascertain what are the powers of the latter company.

4th. That the power to sell and convey all its property and franchises, and thus escape from its duties and obligations to the public, could only be conferred by the Legislature upon the Cumberland and Pennsylvania Railroad Company, and could not arise by implication from the provisions contained in the charter of the Consolidation Coal Company, which have reference only to the powers of the latter, and do not profess to confer any new powers upon other companies.

5th. That the deed of March 2nd, 1876, was inoperative and void, and passed no title to the grantee in the franchises, railroad and other property of the Cumberland and Pennsylvania Railroad Company, and the latter company continued to hold the same, notwithstanding the deed, and remained subject to the power of the Legislature to alter or amend its charter.

6th. That the Act of 1876, ch. 242, sec. 14, regulating the rates of transportation on railroads, has no application to the railroad of the Cumberland and Pennsylvania Railroad Company.

7th. That the Cumberland and Pennsylvania Railroad Company was still a subsisting corporation, vested with rights, franchises and property granted by and acquired under its charter, and subject to the power of the Legislature to regulate the rates to be charged for transportation upon its road.

8th. That this power was exercised by the Act of 1876, ch. 64, and assuming that Act to be free from constitutional objection, it would follow that no rates in excess of those allowed by that Act could lawfully be charged for transportation on its road.

9th. That the alleged excessive rates exacted by the Consolidation Coal Company, while in charge of and carrying on the road, claiming to be owner under the deed, could not be construed as a violation of the charter of the latter, and therefore they furnished no sufficient cause for the forfeiture thereof.

APPEAL from the Circuit Court for Allegany County, in Equity.

The appellant, by its Attorney General, under authority of the Governor, filed its petition in the Court below, praying the Court to decree a forfeiture of the charter, corporate powers and franchises of the appellee, for the reasons stated in the petition.

The Court below, (PEARRE, J.,) gave judgment for the defendant upon certain demurrers filed by the petitioner and dismissed the said petition. The petitioner appealed.

The case is sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*Attorney General Gwynn*, for the appellant.

*J. P. Poe, J. H. Gordon* and *Wm. Pinkney Whyte*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This proceeding was instituted by the Attorney General under the authority of the Governor, to forfeit the charter of the appellee, for certain alleged abuses of its franchises and corporate powers. The power of the Governor to

The State *vs.* Consolidation Coal Company.

direct the proceeding is derived from the Act of 1868 ch. 471 sec. 176, known as the General Incorporation Act, which provides :

"Whenever the Attorney General of the State, or the State's Attorney for the City of Baltimore, or for any County in this State, shall be authorized by the Governor to institute proceedings against any corporation incorporated under the laws of this State, to ascertain whether such corporation has been guilty of such misuse, abuse or nonuse of its corporate powers and franchises, as by law would authorize and make proper the forfeiture of its charter, corporate powers and franchises, the Attorney General, or State's Attorney so authorized, shall file in the Court hereafter designated, a petition in the name of the State, setting forth fully and in detail the alleged abuse, misuse or nonuser; by reason whereof the said forfeiture is sought, &c., &c."

While it is clear that proceedings by *scire facias*, or otherwise, against a corporation for the forfeiture of its charter, cannot be maintained except by the sanction and authority of the Legislature, a special Act of Assembly for this purpose is not required. It is competent for the Legislature, instead of passing a special Act authorizing such proceedings to be instituted in a particular case; by a general law, to authorize suits for this purpose to be instituted at the instance of private parties, as was done by the Act of 1818 ch. 177 sec. 4, codified in Article 12 of the Code; or to confer the power upon the Governor to cause the proceedings to be instituted, when in his discretion he may consider the public interests so require, and this power we think has been conferred by the 176th section of the Act of 1868. The objection made by the appellees, that this proceeding is without lawful authority is therefore overruled.

It has been contended on the part of the State, that the Act of 1860, *ch.* 265, incorporating the appellee, was not

a valid and operative Act, and consequently that the appellee was never lawfully incorporated. The reason assigned for this position is, that the Act by its sixth section conferred on the appellee the right to locate, construct and maintain such railroad or railroads as the directors thereof might deem necessary for the convenient transaction of its business, and invested the appellee with all the rights of *eminent domain*, in the survey, location and construction of such railroads, which had been conferred upon the Baltimore and Ohio Railroad Co., by its Act of incorporation, 1826 ch. 123, or by any supplement thereto. It is argued that by this provision, power was attempted to be conferred upon the appellee, to enter upon land or property intended to be condemned, *as soon as it had been viewed by a jury*, and to occupy and use it for the construction and repair of its road, *without waiting for the proceedings of the jury upon such view, and without payment or tender of compensation to the owner of the land.* It being insisted that such power was conferred upon the Baltimore and Ohio Railroad Co., by its charter, such a power being inconsistent with the Constitution of 1850 *Art.* 3 *sec.* 46, which was in force when the Act of 1860 *ch.* 265 was passed, and which declared that the Legislature should enact no law authorizing private property to be taken for public use without just compensation as agreed upon between the parties or awarded by a jury, *being first paid or tendered.* The same provision is contained in the Constitutions of 1864 and 1867. Without stopping to inquire whether the charter of the Baltimore and Ohio Railroad Co. is in this respect fairly susceptible of the construction placed on it by the Attorney General, it is very clear that the Act of 1860 ch. 265, must be interpreted in connection with, and in subordination to the constitutional provision; and the charter of the Baltimore and Ohio Railroad Co. to which it refers, must in this respect, be construed as consistent with the Constitution,

its words being clearly susceptible of such construction. If it were otherwise, the particular provision would simply be inoperative, in so far as it might be inconsistent with the Constitution, but would not render the whole Act void. *Davis vs. The State,* 7 *Md.,* 151; *Mayor, &c. of Hagerstown vs. Deckert,* 32 *Md.,* 384. But in our opinion the Act of 1860 ch. 265, properly construed, is not liable to the objection urged against it by the Attorney General.

The next question to be considered is the validity of the deed of March 2nd 1876, by which the "Cumberland and Pennsylvania Railroad Company" sold and conveyed to the appellee, its railroad, property and franchises.

The Cumberland and Pennsylvania Railroad Company was chartered by the *Act of* 1849 *ch.* 469. It was authorized to construct a railroad from Cumberland to some suitable point on the dividing line between the States of Maryland and Pennsylvania, and to make lateral roads in any direction, branching from its main line. By *sec.* 21 full right and privilege was reserved to citizens and corporations of the State to connect with said railroad, and by *sec.* 22, *the Legislature reserved to itself the right to alter, repeal or annul this Act at pleasure.* By the *Act of* 1853 *ch.* 96, it was authorized to connect with any existing railroad leading from Cumberland, at any point west of that town, and to construct a railroad from the place of such connection to the Pennsylvania line; or to purchase any such railroad, or any part thereof, and the lands, franchises and appurtenances held for the purposes of the same, and was given power to construct and build a connection from any railroad, or part of any railroad so purchased, from any point thereof west of Cumberland, to the Pennsylvania line. By the *Act of* 1856 *ch.* 11, it was authorized to construct an extension of its railroad from its *terminus* at the mines near Frostburg, in Allegany County, to such point or points in the valley of George's Creek, as lay north of the boundary line separating the

lands of the George's Creek Coal and Iron Company from the lands known as the "Aspinwall Purchase," and was released from the duty of extending its road to the Pennsylvania line. By the *Act of* 1860 *ch.* 78 it was authorized to extend its said railroad, or any of the branches thereof, to any mine or mines in the valley of George's Creek.

Under the *Act of* 1853 *ch.* 96, before referred to, it acquired the railroad of the Mount Savage Iron Company, and in October 1863, purchased the railroad of the George's Creek Coal and Iron Company; thus extending its railroad from Cumberland to Piedmont, through the coal region. This last purchase was confirmed by the Legislature, by the *Act of* 1864 *ch.* 53, and the Cumberland and Pennsylvania Railroad was authorized to hold, manage and control the railroad so purchased, with its appendages, &c., with the same rights, powers and franchises, as if the same had been acquired and constructed under its original charter and the supplements thereto.

By the original charter (1849 ch. 469) the Cumberland and Pennsylvania Railroad Company was authorized to charge *six cents per ton per mile* for tolls and transportation, and *three cents* per mile for each passenger. By the *Act of* 1868 *ch.* 334 these rates were reduced, and the company was authorized to charge for tolls and transportation not more than *five cents per ton, per mile, when the distance of such transportation should not exceed five miles; four cents per ton, per mile, if the distance should be more than five miles and not more then ten miles; and three cents per ton, per mile, when the distance should exceed ten miles.*

This amendment to the charter was accepted by the company and it continued its business operations in accordance therewith till the spring of 1876; when the Legislature then in session, by the *Act of* 1876 *ch.* 64, amended the charter of the company, fixing the rates for toll and transportation at *four cents per ton per mile* where the dis-

tance should not exceed *four miles; three cents per ton per mile,* for over *four* and not over *ten* miles, and *two cents per ton per mile* where the whole distance *should exceed ten miles.*

This Act was approved by the Governor on the 14th day of March 1876 ; while it was pending, the deed of the company, dated March 2nd 1876 was executed, conveying to the appellee, its railroad and all its property of every description with its privileges and franchises.

Was this deed valid and effectual for the purpose therein stated ?  No express power to make the deed has been conferred by the Legislature upon the Cumberland and Pennsylvania Railroad Company.  Its charter is silent upon the subject; did it possess the power as inherent in it as owner, or incidental to the exercise of its corporate powers ? No rule of law is better established than that a corporation, which derives its existence entirely from the Act of the Legislature can exercise no powers except such as are expressly conferred by its charter, and such as are necessarily incidental thereto, to enable it to accomplish the purposes of its creation.

This doctrine has been established by a long course of judicial decisions, and has been incorporated in the Legislation of the State.  The Act of 1868 *ch.* 471 *sec.* 51 declares that " no corporation, shall possess or exercise any corporate powers, except such as are conferred by law, and such as shall be necessary to the exercise of the powers so acquired," and by *sec.* 216, this provision is made " applicable to all corporations heretofore formed under the general laws of the State relating to corporations, or under any special law."  This provision therefore applies to the Cumberland and Pennsylvania Railroad Company ; but it in no respect changes the law, it is merely declaratory of the rule as it before existed.  We think it may be considered as well settled that a corporation of this kind cannot voluntarily alien its franchises, or its property so as to dis-

able itself from performing its duties and obligations to the public, without the authority of the Legislature. This doctrine is well settled in England, and the cases there are uniform. We refer to *Winch vs. Birkenhead R. Co.*, 16 *Jurist*, 1035; *Beman vs. Rufford*, 1 *Simon, N. S.*, 550; *South Yorkshire R. Co. vs. Great Northern R. Co.*, 3 *De G., M. & G.*, 576, (9 *Exch.*, 84;) *East Anglican R. Co. vs. Eastern Counties R.*, 11 *C. B.*, 75, (73 *Eng. C. L.*, 775;) *The Great Northern R Co. vs. The Eastern Counties R. Co.*, 9 *Hare*, 306; *Shrewsbury, &c. R. Co. vs. North-Western R. Co.*, 6 *H. of L. Cases*, 113. In the case last cited (p. 136) the Chancellor quotes the language of Baron PARKE "that where a corporation is created by Act of Parliament for particular purposes with special powers, their deed, though under their corporate seal, does not bind them, if it appears by the express provisions of the statute creating the corporation, or by necessary or reasonable inference from its enactment, that the deed is *ultra vires*, that is that the Legislature meant that such a deed should not be made."

In this country there is some conflict in the decisions, as to the power of a railroad company to mortgage its property without legislative authority. In Maryland such a power has never been recognized by the Courts; and it is not necessary now to express any opinion thereon. But with respect to the voluntary and absolute alienation of its franchises and property, the great weight of the decisions in this country is against the existence of such a power. It has been repeatedly held that without legislative authority, a railroad company has no power to lease or alien its road and other property; many cases might be cited, we refer only to *The Troy & Rutland R. vs. Kerr*, 17 *Barbour*, 581; *York & Midland R. Co. vs. Winans*, 17 *Howard*, 39; *Commonwealth vs. Smith*, 10 *Allen*, 448; *Richardson vs. Sibley*, 11 *Allen*, 65; *Stewart & Foltz's Appeal*, 56 *Pa. R.*, 413; *Black vs. Del. & R.*

*Canal Co.*, 22 *N. J. Eq.*, 130, 399, where many cases are cited, *and the same case on appeal* 24 *N. J.*, 455.

The reasons upon which these decisions rest are that corporations of this kind are *quasi* public in their nature, invested with large and important powers, and designed to subserve the public interests. *Rogers vs. Burlington*, 3 *Wal.*, 663; *Olcott vs. the Supervisors*, 16 *Wal.*, 695, and it is wholly inconsistent with the nature of the corporation, and subversive of the purposes of its creation, to concede to it the power of divesting itself at will of all its property, and thus escape its obligations to the public.

In speaking of this company, this Court said, "It is a general carrier of passengers and freights, and has the usual railroad powers and franchises, and is, of course, subject to the ordinary principles that govern common carriers of its class. One main object of its incorporation and construction was the facility it might afford to the development of the coal trade of that section of the State, and in which the State itself was, and is still, largely interested. It is now one of the main instrumentalities by which the coal trade of the Chesapeake and Ohio Canal is maintained, and its operation, therefore, is alike important to the coal companies and to the Chesapeake and Ohio Canal Company." *Lynn vs. Mt. Savage Iron Co., et al.*, 34 *Md.*, 632.

Looking to the nature of this corporation, the objects and purposes of its creation, and to its powers and duties as defined in its charter, we are clearly of opinion that it was not authorized to execute the deed of March 2nd 1876 without the consent of the Legislature.

The appellee's counsel have argued that this consent is found in the charter of the *Consolidation Coal Company*, (1860 *ch.* 265) whereby it was authorized to construct and maintain such railroads as the directors may deem necessary for the convenient transaction of its business, and for the transportation of coal and other products of its

mines and property to market; and was further author-
ized, *in lieu of* "*constructing any such railroad or rail-
roads, or in addition thereto, to purchase, lease, hold and
maintain any other railroad or railroads, or other roads or
ways, water-courses or channels of transportation, already
constructed or hereafter to be constructed, with all the rights,
powers and franchises connected therewith.*" It has been
contended that this power given to the appellee to pur-
chase, carries with it by implication, a power to the Cum-
berland and Pennsylvania Railroad Company to sell; and
as a consequence that a similar power to sell was thereby
conferred, by implication, upon every other railroad or
other transportation company in the State, from which the
appellee might choose to buy. But in our judgment this
position cannot be maintained. To constitute a valid sale
and transfer, it is necessary not only that the purchaser
should be legally competent to take, but also that the
vendor should be clothed with the legal power and capacity
to sell and convey the title. We have already said that
the railroad company did not possess under its charter,
without the consent of the Legislature the power or author-
ity to execute the deed of March 2nd 1876. Its powers
in this respect were not altered or enlarged by the provi-
sions contained in the charter of the appellee. The Act
of 1860 chartering the appellee, was not designed, nor
can it be properly construed, to be an amendment of the
charter granted to the Cumberland and Pennsylvania
Railroad Company, to which alone we must look in order
to ascertain what are the powers of the latter company.
It would be contrary both to reason and authority, to im-
ply from anything contained in the charter of the appel-
lee, that the Legislature intended to authorize the Cum-
berland and Pennsylvania Railroad Company to sell and
convey all its property and franchises, and to escape from
its duties and obligations to the public. The power to do
this could be conferred only by the Legislature upon the

Cumberland and Pennsylvania Railroad Company, and cannot arise by implication from the provisions contained in the charter of the appellee, which have reference only to the powers, rights and duties of the latter, and do not profess to confer any new powers upon other companies. It follows from what has been said, that the deed of *March 2nd* 1876 was inoperative and void, passed no title to the appellee in the franchises, railroad and other property of the Cumberland and Pennsylvania Railroad Company, and that the latter company continued to hold the same notwithstanding the deed, and remained subject to the power of the Legislature to alter or amend its charter.

We next inquire in what respect has the charter been altered or amended? It is clear that the *Act of* 1876 *ch.* 64, before referred to, so operated, it was passed for that purpose and in terms fixes the rates which the company would be entitled thereafter to demand for tolls and transportation on its road.

In our opinion the Act of 1876 ch. 242 sec. 14 regulating the rates of transportation on railroads, has no application to the railroad of the Cumberland and Pennsylvania Railroad Company. That section refers only to railroad companies incorporated under that Act, or which had been incorporated under the Act of 1870 ch. 476, for which it was a substitute.

The appellee having taken charge and possession of the Cumberland and Pennsylvania Company's railroad and all its property under the deed, has continued ever since to conduct the same as its own; claiming the right to charge for transportation thereon the rates allowed by its own charter, which are in excess of the rates allowed by the Act of 1876 ch. 64, and has exacted and received rates greater than those allowed by that Act. The causes of forfeiture alleged, are these illegal and excessive charges exacted and received by the appellee.

The action of the appellee has been based upon the belief that the deed was valid, and that it acquired a good title to the railroad. It turns out that in this belief the appellee was in error.

The Cumberland and Pennsylvania Railroad Company is still a subsisting corporation, vested with the rights, franchises and property granted by and acquired under its charter, and subject to the power of the Legislature to regulate the rates to be charged for transportation upon its road. This power was exercised by the Legislature, by the Act of 1876 ch. 64, and assuming that Act to be free from constitutional objection, it would follow that no rates in excess of those allowed by that Act, could lawfully be charged for transportation on its road.

But the alleged excessive rates exacted by the appellee while in charge of, and carrying on the road, claiming to be owner under the deed, cannot be construed as a violation of the appellee's charter, and therefore they furnish no sufficient cause for the forfeiture thereof. Being clothed with large and extensive powers to purchase any railroads, the appellee might well have believed that its purchase from the Cumberland and Pennsylvania Company was valid. It is not charged in this case, that it acted fraudulently or in bad faith. The deed is invalid only because of the want of power in the railroad company to execute it. The acts of the appellee under it, if done in good faith are no cause of forfeiture of the charter of the appellee. The judgment of the Circuit Court must therefore be affirmed.

In the view we have taken of this case it becomes unnecessary to express our opinion upon the constitutionality of the Act of 1876 ch. 64, or to consider here the question, as to the supposed limitations upon the power of the Legislature to alter and amend the charter of the railroad company. That question has been argued both in this case, and in the appeal of the American Coal Com-

pany against this appellee; it arises more properly in the latter case, and our opinion thereon will be expressed in disposing of that appeal.

*Judgment affirmed.*

(Decided 1st March, 1877.)