This is an appeal from an order of the Circuit Court for Allegany County dismissing a petition filed on behalf of the State of Maryland against the Cumberland and Pennsylvania Railroad Company. The petition was filed under chapter 257 of the Acts of 1906, for the purpose of procuring a decree of forfeiture of the charter of the railroad company for its refusal to comply with the provisions of that Act.
To this petition the railroad company filed an answer containing twenty-two paragraphs, to all of which the State demurred except the fourteenth and twentieth, to which it replied. At the hearing of the demurrers the Court, mounting up to the first error in the pleadings, held the original petititon to be bad, and the State refusing to amend, the order was passed dismissing the petition and the State appealed.
The petition avers that the railroad company was incorporated by the State by a special Act, ch. 469 of the Acts of 1849, which reserved to the Legislature the right to alter, amend or annul at its pleasure the charter thereby granted, for the main purpose of constructing a railroad into the coal fields of Allegany County to promote their development.
That by the Act of 1906, ch. 257, the charter of the railroad company was amended by adding thereto the following provision: "The Cumberland and Pennsylvania Railroad Company shall not, after the 31st day of May next, permit its tracks to connect with the tracks of the Baltimore and Ohio Railroad Company, and shall not permit its tracks, right of way or other property to be used by the said Baltimore and Ohio Railroad Company, or by any other railroad company leased, operated, owned or controlled by the said Baltimore and Ohio Railroad Company, unless the said Baltimore and Ohio Railroad Company shall on or before said date so arrange its freight charges upon coal delivered to it from the Cumberland and Pennsylvania Railroad Company for shipment *Page 481 
over its lines, that the joint and combined freight charges of the said two railroad companies shall not exceed the lowest total freight charges upon coal shipped to the same destination over the line of the Baltimore and Ohio Railroad Company, or over the line of any railroad company leased, operated, owned or controlled by the said Baltimore and Ohio Railroad Company from any point in the State of Pennsylvania, or West Virginia, which is as far or further distant from such destination as or than the point in Allegany County, at which such coal is delivered to the Cumberland and Pennsylvania Railroad Company; the intention of this provision being to provide that shippers of coal from Allegany County, in the State of Maryland, shall not be required to pay greater freight charges than shippers of coal from the States of Pennsylvania and West Virginia are required to pay upon their coal hauled equally far or further."
That the said Act of 1906 also made it the duty of the State's Attorney for Allegany County on and after June the 1st of that year to cause inquiry to be made whether the Cumberland and Pennsylvania Railroad Company was then permitting its tracks to connect with or its right of way to be used by the Baltimore and Ohio Railroad Company or any other railroad company, leased, operated, owned or controlled by it, in violation of the terms of said Act, and required him, if he had reason to believe on or after said date that the Cumberland and Pennsylvania Railroad Company was not complying with the terms and provisions of the Act, to institute proceedings in the Circuit Court for Allegany County to ascertain whether the said railroad company had been guilty of such misuse or abuse of its corporate powers and franchises as would by law authorize and make proper the forfeiture of its charter, corporate powers and franchises; "the mode of procedure to be the same as is now provided by the General Laws of this State in such cases."
That it was further provided by the same Act that, if at the trial of any such proceeding instituted by the State's Attorney under its provisions, it should be judicially determined that *Page 482 
the Cumberland and Pennsylvania Railroad Company was permitting its tracks to connect with those of the Baltimore and Ohio R.R. Co., or of any railroad company leased, operated, owned or controlled by it, in violation of the provisions of the Act, then it should be the duty of the Court to decree the forfeiture of the charter of the Cumberland and Penna. R.R. Co., "and that thereafter such proceedings shall be had as are now provided under the general laws of this State in such cases."
The petition then charges that the State's Attorney has since June 1st, 1906, caused inquiry to be made whether the Cumberland Penna. R.R. Co. is permitting its tracks to connect with, and its right of way and other property to be used by the Baltimore 
Ohio R.R. Co. or any other company leased, operated, owned or controlled by it, and that he has reason to believe that the Cumberland Penna. R.R. Co. has been and is now permitting its tracks to be so connected and its right of way and other property to be so used, in violation of the provisions of the Act, and that it has never complied therewith, although the time limited by the Act for its compliance with the provisions thereof, has long since expired and that by reason thereof it is liable to a forfeiture of its charter and franchises.
A certified copy of the Act of 1906, ch. 257, is filed with the petition as an exhibit and an inspection of the copy shows that the provisions of the Act have been stated with substantial accuracy in the petition.
It is unnecessary for the purposes of this opinion to state fully the contents of the answer of the railroad company to this petition for the forfeiture of its charter. Its salient features are the admission that the company has failed to comply with the requirements of the Act of 1906, ch. 257, and the assertion that the Act is invalid because of its alleged unconstitutionality. It is insisted in the answer that the Act is in conflict with the provisions of Art. 3, § 29, of the State Constitution which requires that every law "shall embrace but one subject and that shall be desc ribed in its title;" and that *Page 483 
it is also invalid, under clause 3, of sec. 8, of Art. 1, of the Constitution of the United States because, it attempts in effect to regulate interstate commerce.
The State was in our opinion entitled to respond as it did by way of demurrer to the several defenses set up by the answer. The general laws of this State prescribing the method of procedure for the forfeiture of the charter of a corporation, Art. 23, sec. 367, c., do not in terms authorize the filing of demurrers to an answer to the petition, but that course was pursued with the acquiescence of this Court in the cases of State v.Consolidation Coal Co., 46 Md. 1; State v. Easton SocialClub, 73 Md. 100; and Fraternal Alliance v. State,77 Md. 557, and it may now be regarded as a correct mode of pleading. The demurrers to the answer having thus been properly filed, it becomes our duty to inspect the whole proceeding and mount up to the first fault in pleading. The question of the constitutionality of the Act of 1906, ch. 257, on which the State's petition relies is thus brought before us for determination.
We will first consider whether the statute under consideration is obnoxious to sec. 29, of Art. 23, of the Constitution of Maryland. Few if any other provisions of the fundamental law of our State have been before us for construction as frequently as this one. We have always given it a broad and liberal construction and have generally been able to uphold the validity of the statutes, alleged to conflict with its provisions, and thus effectuate the legislative intent.
It has accordingly been often said by this Court that the true meaning of this section of the Constitution is that, "If the several sections of the law refer to and are germane to the same subject matter which is described in its title, it is considered as embracing but a single subject and as satisfying the Constitution in this respect;" and that, "While the title must indicate the subject of the Act it need not give an abstract of its contents nor mention the means by which the general purpose is to be accomplished." Mayor, c., v. Reitz, 50 Md. 574;Drennen v. Banks, 80 Md. 316. *Page 484 
Yet, as was recently said by us in Kafka v. Wilkinson,99 Md. 241, and State v. Savings Bank, 103 Md. 200, in construing this constitutional provision the Courts "have not hesitated to strike down legislative Acts that were clear infractions of its purpose and object. These have been declared to be two-fold; the first is to prevent the combination in one Act of several distinct and incongruous subjects, and the second is that the Legislature and the people of the State may be fairly advised of the real nature of impending legislation," or as was said in Stiefel v. Md. Inst. for the Blind, 61 Md. 148, "Publicity and a knowledge of the true effect and operation of every bill brought before the Legislature are the great safeguards against ill-considered and improper legislation. The provision in question is one among many others designed to promote those objects." And in Luman v. Hitchens, 90 Md. 23, we said: "Though the title need not contain an abstract of the bill nor give in detail the provisions of the Act it must not be misleading by apparently limiting the enactment to a much narrower scope than the body of the Act is made to compass; nor must there be cloaked in the enactment any foreign, discordant or irrelevant matter not disclosed in the title."
When tested by the principles thus announced, how does the Act now before us stand. Its title is as follows: "An Act to amend ch. 469 of the Acts of 1849, entitled `An Act to incorporate the Cumberland and Pennsylvania Railroad Company,' and to amend the charter of said company so as to prohibit it from allowing its tracks to connect with, or its tracks, right of way or other property, to be used by the Baltimore and Ohio Railroad Company and by any other railroad company which is operated, owned or controlled by, or whose railroad property is leased to, the said Baltimore and Ohio Railroad Company, except upon certain conditions."
The contents of the first section of the Act if otherwise unobjectionable would be fairly germane to the title as they provide that, after a specified date, the Railroad Company shall not, except upon certain conditions therein specified, permit *Page 485 
its tracks to connect with or its right of way or other property to be used by the Baltimore Ohio R.R. Co. or any other railroad company leased, controlled or operated by it. The second section provides that, upon the railroad company continuing to do the acts prohibited by the first section, the State's Attorney for Allegany County shall file a petition in the Circuit Court for the forfeiture of the charter and franchises of the company "the mode of procedure to be the same as is now provided by the general laws of this State in such cases;" and the third section affirmatively directs the Court upon the ascertainment of the fact of the commission of the prohibited acts by the railroad company to decree the forfeiture of its charter.
These last two sections do not in any sense provide for an amendment to the charter of the railroad company but they in effect operate to make, quoad the proceedings authorized by them, radical changes in or departures from the mode of proceeding prescribed by the general laws of this State relating to the forfeiture of charters of corporations. These general laws are found in Art. 23, § 367, c., of the Code, and they require the authority of the Governor of the State to be given to the State's Attorney to institute proceedings for the forfeiture of the charter of a corporation, and if in such proceedings the legal cause of forfeiture be shown to exist the Court is authorized, if it shall be of the opinion that the publicinterests require it, to decree the forfeiture of the charter. By sections 2 and 3 of the Act now under consideration, not only is the protection of the Governor's discretion as to the advisability of instituting the proceedings withdrawn, but, upon proof of the existence of the situation described in the statute, the Court is shorn of the judicial authority and function conferred on it by the general laws of the State, sec. 370 of Art. 23 of Code, to determine whether the public interests require a forfeiture, and it is imperatively directed to decree the forfeiture of the charter of the corporation against which the proceeding was instituted. Of these radical and important provisions of the Act, its title contains no mention or intimation. That defect in the title *Page 486 
in our opinion rendered at least the second and third sections, under which these proceedings were instituted, invalid because obnoxious to the provision under consideration of the Constitution of Maryland and afforded the Court below proper ground for dismissing the petition.
We will next consider whether the Act of 1906, chapter 257, may be fairly considered as an attempted regulation of interstate commerce and for that reason invalid. We do not deem it important to here review the successive steps of judicial construction by which the Courts have arrived at the interpretation now given to clause 3 of sec. 8 of Art. 1 of the Federal Constitution by which the power to regulate interstate commerce was conferred upon Congress. It is sufficient to say that it is now firmly settled by the decisions of the Supreme Court of the United States that while a State may regulate without Federal interference such commerce as begins and ends within its own limits and is not connected with a continuous transportation through or into other States, it is powerless to fix and enforce rates or charges, even as between points in its own territory, for that commerce which crosses State lines under a continuous transportation. Wabash,St. L. Pac. R.R. Co. v. Illinois, 118 U.S. 557; Hanley v.Kansas City Southern R.R. Co., 187 U.S. 617; C. C. BridgeCo. v. Kentucky, 154 U.S. 204; N. W.R.R. Co. v.Pennsylvania, 136 U.S. 120; St. Clair County v. InterstateTransfer Co., 192 U.S. 454; Central R.R. of Georgia v.Murphy, 196 U.S. 202. It follows as a matter of course that if a State has no power to regulate charges for interstate commerce by direct legislation it can neither authorize nor require corporations under its jurisdiction to do so.
In Wabash, St. L. Pac. R.R. Co. v. Illinois, supra, it was held that a State had no power to pass laws intended to regulate interstate commerce even in the absence of legislation by Congress upon the subject, but that is not material to the present case as it is a well-known fact that Congress, by the enactment of the several laws known as Interstate Commerce Acts, has undertaken to provide for the regulation of charges for Interstate Commerce. *Page 487 
The Act of 1906, ch. 257, now under consideration does in our opinion attempt to regulate charges for interstate commerce and is for that reason also invalid. It is apparent from the recitals contained in its preamble that the alleged abuse which it was intended to correct was the rate of charges in force at the date of its passage for the transportation of coal over the Cumberland and Pennsylvania and Baltimore Ohio Railroads from points inAllegany County to tidewater points. It sought to correct the abuse by requiring the Cumberland and Pennsylvania Railroad Co. to procure, by re-arrangement of the joint freight rates of the two railroad companies, such charges to be no greater than those made by them for the transportation of coal shipped over their lines to the same tidewater from equally distant points in Pennsylvania and West Virginia.
No testimony was taken in the case showing the precise course and location of the railroads mentioned in the Act, but a map used by both sides in the argument before us showed the location of the Cumberland and Pennsylvania Railroad tracks and their points of connection with other railroads; and the course through the States of Maryland and West Virginia, followed by the Baltimore and Ohio Railroad from Allegany County to tidewater has been so long established and is so well known to the residents of this State that it may be treated as a "geographical feature of the country" and its location held to be a matter of common knowledge and regarded as having been familiar to the Legislature that passed the Act. It would not be possible to carry coal from Allegany County to tidewater points over these railroads without passing for considerable distances through other States than Maryland. Such transportation of coal therefore from Allegany County as well as from Pennsylvania and West Virginia to tidewater would constitute interstate commerce and it would be beyond the power of this State to regulate or prescribe a rate of charges therefor. Tidewater points are not mentioned in the body of the Act as the destination of the shipments of coal therein referred to but the plain declarations contained in its *Page 488 
preamble of the alleged abuse to be corrected by its passage and the condition imposed by its first section that the "joint and combined freight charges of the said two railroads" shall not exceed the limit therein mentioned, make apparent the result sought to be accomplished by its enactment.
The appellant's counsel concede that a State cannot pass a statute which amounts to a regulation of interstate commerce or prescribe rules for conducting it, but they rely upon the proposition, frequently announced by the Federal Courts and recognized and relied on by us in Stevens v. the State,89 Md. 669, that a State law is not rendered invalid because it incidently or remotely affects interstate commerce or its instruments. They also insist that, as the State reserved to itself the power to alter or repeal at its pleasure the charter of the appellee, it could exact any condition it saw fit as the price of allowing that charter to continue in force and had therefore the right to say to the appellee by the Act of 1906, ch. 257, that its charter would be forfeited unless it and its confederate and ally would carry coal to a common destination on as favorable terms from Allegany county as from points in Pennsylvania and West Virginia equally distant with it from that destination. Or in other words that the State might in that manner indirectly limit, which is to regulate, the rates for interstate transportation of coal from Allegany county, although it was confessedly powerless to do so by direct legislativeenactment. To that contention we cannot yield our assent.
The great majority of Federal cases relied on by the appellant in this connection prove upon examination to have upheld laws passed by the several States in exercise of the police power for the protection of the persons and animals within their borders from the introduction of contagious diseases or dangerous or fraudulent commodities or for preventing the desecration of the Sabbath or injuring public morals, and to have had only an incidental relation to interstate commerce. The case of the B. O. Railroad Co. v. Maryland, 21 Wallace, 456, which held valid the stipulation contained *Page 489 
in the charter of that railroad company requiring it to pay to the State one-fifth of its gross receipts from the passenger traffic on its Washington Branch, comes nearer than any other case relied on by the appellant to the one now before us. But in that case, which was admitted by the Court to be a close one, the inability of the State to pass any Act amounting to a regulation of interstate commerce was asserted by the Supreme Court, and the railroad company was held liable to the State for the sum in controversy upon the ground that it constituted, not a tax or restriction on the travel or commerce, but a bonus, exacted for the grant of a franchise, to which the railroad company had agreed by accepting the terms of the charter.
An accurate statement of the law relating to this subject is found in McLean v. Denver Rio Graude R.R. Co., 203 U.S. 50, where it is said by the Supreme Court: "It will only be necessary to refer to a few of the many cases decided in this Court holding valid enactments of Legislatures having for their object the protection, welfare and safety of the people, although such laws may have an effect upon interstate commerce. M.K. T. RailroadCo. v. Haber, 169 U.S. 613, 635; Chicago, Milwaukee, etc.Railroad Co. v. Solan, 169 U.S. 133; Pennsylvania RailroadCo. v. Hughes, 191 U.S. 477. The principle decided in these cases is that a State or Territory has the right to legislate for the safety and welfare of its people, and that right is not taken from it because of the exclusive right of Congress to regulate interstate commerce, except in cases where the attempted exercise of authority by the Legislature is in conflict with an Act of Congress or is an attempt to regulate interstate commerce." We have already said that we regard the passage of the Act whose validity is called in question in the present case as a plain attempt to regulate a traffic which is essentially interstate commerce, although the regulation is sought to be indirectly accomplished by an effort to amend the charter of the appellee.
We must not be understood, in holding the Act to be invalid *Page 490 
because unconstitutional in the respects mentioned in this opinion, as passing upon or determining the merits of other defenses to the petition which may be relied on in the answer.
The appellee moved to dismiss the appeal because the Act of 1906, ch. 257, did not provide for an appeal from the action of the lower Court on the petition which it authorized to be filed for vacating the appellee's charter. We think the Act does provide for such an appeal,
Sec. 1, provides generally that mode of proceeding shall be the same as is now provided by the general laws of the State in such cases, and sec. 2, specifically provides that after the decreehas been passed such proceedings shall be had as are now provided under the general laws of this State in such cases. Now if we turn to Art, 23, sec. 367, c., of the Code and examine the general laws of the State regulating the proceedings for the forfeiture of corporate charters, we find it distinctly provided in sec. 374, that either party may appeal from any judgment or determination of the Court had on petition filed for forfeiture under this Article within thirty days from the date of the judgment or determination of the Court. The motion to dismiss the appeal must therefore be overruled.
For the reasons mentioned in this opinion the order appealed from must be affirmed.
Order affirmed.