MURPHY, Chief Judge of the Court of Appeals
of Maryland, et al.

*v.* YATES

[No. 68, September Term, 1975.]

*Decided December 22, 1975.*

*Motion for reconsideration filed January 20, 1976; denied February 5, 1976.*

The cause was argued before SINGLEY, SMITH, LEVINE, ELDRIDGE and O'DONNELL, JJ., and ROBERT E. CLAPP, JR., Associate Judge of the Sixth Judicial Circuit and DAVID ROSS, Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Francis B. Burch, Attorney General,* and *George A. Nilson, Assistant Attorney General,* with whom were *Henry R. Lord, Deputy Attorney General,* and *Robert A. Zarnoch, Assistant Attorney General,* on the brief, for appellants.

*J. Edward Davis* and *John J. Ghingher, III,* with whom were *Weinberg & Green* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which ELDRIDGE, J., concurs at page 504 *infra*.

At its 1975 session, the General Assembly enacted what has come to be known as the State Prosecutor Act (the Act).[1] The Act created the office of State Prosecutor, "an independent unit in the executive branch . . . for administrative purposes only . . . within the office of the Attorney General."[2] The State Prosecutor would be

---

1. The text of Chapter 255 of the Laws of 1975 (the Act) as enacted by the General Assembly appears as an Appendix to this opinion. It may also be found in Maryland Code (1957, 1968 Repl. Vol., 1975 Cum. Supp.) Art. 10, §§ 33A through 33F.

2. Of more than passing interest is the fact that Chapter 255 as originally proposed contained alternate versions of the Act, the first of which was to become effective on 1 January 1977 only in the event of the ratification of a constitutional amendment if proposed by the Legislature and enacted by the voters in the November, 1976 general election. We were advised at argument that such a constitutional amendment was not proposed at the 1975 session of the General Assembly.

nominated by a State Prosecutor Selection and Disabilities Commission (the Commission) created by the Act and appointed by the Governor for a term of six years, subject to confirmation by the Senate. The State Prosecutor would investigate, on his own initiative, or at the request of the Governor, the General Assembly, the Attorney General or a State's Attorney, criminal offenses under the State election laws and conflict of interest laws; violations of State bribery laws; offenses constituting criminal malfeasance, misfeasance or nonfeasance in office by an officer of the State or of a political subdivision of the State; and investigate, at the request of the Governor, Attorney General, General Assembly or a State's Attorney, criminal activity committed partly in the State and partly in another jurisdiction or committed in more than one political subdivision of the State. Upon a finding of an alleged criminal violation, the State's Attorney having jurisdiction would be allowed 45 days within which to commence prosecution. Upon the failure of a State's Attorney to act, prosecution could be commenced by the State Prosecutor.

The Commission created by the Act consisted of the Chief Judges of the Court of Appeals, the Court of Special Appeals and the District Court (the Chief Judges), and the Attorney General, all *ex officio*, with power to vote; three persons jointly nominated by the President of the Senate and the Speaker of the House of Delegates; one person nominated by the Board of Governors of the Maryland State Bar Association; and one person nominated by the governing board of the Maryland State's Attorneys Association. Staggered terms were provided for the appointed members.

On 15 August 1975, Donna M. Yates, the appellee and cross-appellant here, a resident, registered voter and taxpayer of the State of Maryland, filed in the Circuit Court for Anne Arundel County, in her own behalf and in behalf of similarly situated residents, citizens, taxpayers and property owners of the State, a petition in which she challenged the validity of the Act. Joined as defendants were Robert C. Murphy, Chief Judge of the Court of Appeals of Maryland; Charles E. Orth, Jr., Chief Judge of the Court of

Special Appeals; Robert F. Sweeney, Chief Judge of the District Court; Francis B. Burch, the Attorney General; Andrew L. Sonner,[3] State's Attorney for Montgomery County; Marvin Mandel, Governor of Maryland; Louis L. Goldstein, the State Comptroller, and William S. James, the State Treasurer.

The petition sought declaratory and injunctive relief: a declaration that the Act is unconstitutional and injunctions forbidding the Governor from appointing the Commission provided for by the Act; forbidding the Chief Judges, the Attorney General and State's Attorney Sonner from serving as members of the Commission, and forbidding the Comptroller and the Treasurer from expending public funds for the purposes of the Act.

After the defendants had answered and cross motions for summary judgment had been filed on the ground that there was no genuine dispute as to any material fact, the trial court (Childs, J.) entered a declaration that the Act was constitutional and valid, except to the extent that it purported to designate the Chief Judges as *ex officio* members of the Commission. The trial court further concluded that the provisions of the Act were severable and that the portion declared unconstitutional neither tainted the remainder of the Act nor rendered unworkable a Commission reduced from nine members to six.

An appeal was then noted in behalf of the defendants as well as a cross-appeal, in behalf of Donna M. Yates, contending that the Act is unconstitutional in its entirety. We granted certiorari in order that the matter might be reviewed by us, and advanced the case for argument.

The appellants and cross-appellees would have us hold that:

> (i) Article V of the Maryland Constitution does not preclude the statutory grant of concurrent prosecutorial powers to the office of State Prosecutor;

---

**3.** It appears that Mr. Sonner has been nominated for appointment to the Commission by the Maryland State's Attorneys Association.

(ii) By naming the Chief Judges as *ex officio* members of the Commission the Act does not violate the separation of powers doctrine as embodied in Article 8 of the Declaration of Rights of the Maryland Constitution;

(iii) It is not a violation of Article 33 of the Declaration of Rights of the Maryland Constitution for the Act to provide for *ex officio* membership of the Chief Judges on the Commission;

(iv) The common law rule prohibiting the holding of incompatible positions is not violated by a statute providing for membership of the Attorney General, the Chief Judges and a State's Attorney on the Commission;

(v) It is not a violation of Article 35 of the Declaration of Rights of the Maryland Constitution for the Act to provide for membership of the Chief Judges, the Attorney General and a State's Attorney on the Commission;

(vi) The Act is not invalid because of any alleged contradiction between Sections 33D(A) and 33D(B) [of the Act];

(vii) Investiture of the Governing Board of the Maryland State's Attorneys Association and of the Board of Governors of the Maryland State Bar Association with the power to nominate Commission members does not result in an unlawful delegation to private organizations of powers reserved by Article II, § 10 of the Maryland Constitution to the Governor;

(viii) Even if there are legal or constitutional impediments to any of the public members serving on the Commission, these impediments do not render the Act as a whole invalid or unconstitutional;

(ix) Should service of some on the Commission be held constitutionally impermissible, the remaining members should be deemed to constitute the "authorized membership" under the Act.

Interesting as these questions are, we regard the first as addressing the basic question. We think that the issue might be more precisely stated if it were phrased: "Has the General Assembly constitutional authority, except as provided by the Constitution, to empower any officer to prosecute crimes at the trial level to the exclusion of a State's Attorney?" with a corollary: "Has the General Assembly constitutional authority to empower any officer to conduct proceedings by or against the State at the appellate level to the exclusion of the Attorney General?". In order to address ourselves to it, a brief historical overview may be helpful.

The Declaration of Rights adopted on 14 August 1776 by our first Constitutional Convention provided in Article 3:

"That the inhabitants of Maryland are entitled to the common law of England . . . and to the benefit of such of the English statutes as existed at the time of their first emigration, and which, by experience, have been found applicable to their local and other circumstances, and of such others as have been since made in England, or Great Britain, and have been introduced, used and practised by the courts of law or equity . . . ."

Article XLVIII of the Constitution adopted on the same day provided for an Attorney General, to be appointed by the Governor, but made no attempt to delineate his duties. For more than 40 years the Attorney General had those powers and duties vested in him by the common law of England: the management of all legal affairs and the prosecution of all suits, civil and criminal, in which the Crown was interested, *State ex rel. Lamb v. Cunningham,* 83 Wis. 90, 130-34, 53 N. W. 35, 51-52 (1892); 7 Am.Jur.2d *Attorney General* § 6 (1963). As a consequence, the common law powers and duties of the Attorney General in England

were vested by the Constitution, when read in conjunction with the Declaration of Rights, in Maryland's Attorney General.

At its 1816 session, the General Assembly enacted Chapter 247 of the Laws of that year, which submitted for confirmation by the next succeeding session of the General Assembly an amendment to the Constitution of 1776:

"Sec. 1 *Be it enacted by the General Assembly of Maryland,* That all and every part of the constitution and form of government of this state, which relates to the attorney general, be and the same is hereby abrogated, annulled, and made void.

2. *And be it enacted,* that the duties and services, now provided by law to be done and performed by the attorney general, shall be done and performed by such persons, and in such manner as the general assembly of Maryland shall hereafter direct." (emphasis in original).

3. * * * "

This amendment was confirmed by Chapter 69 of the Laws of 1817.

At the 1817 session, Chapter 146 of the Laws of that year implemented the amendment. It is quoted, in part:

"1. BE IT ENACTED, *by the General Assembly of Maryland,* That there shall be appointed and commissioned a person of sound legal knowledge, who shall be styled Attorney General of Maryland, and who, previous to and during his acting as such, shall reside in the state, and whose duty it shall be to prosecute and defend, on the part of the state, all cases now depending, or which may hereafter be brought in, or removed to, the court of appeals for the western or eastern shore, by or against the state, or wherein the state shall or may be interested, in the same manner that the attorney general heretofore was accustomed to do, or could do; and he shall have, exercise and use, all and

every the powers and authorities in and relating to the same, as the attorney general heretofore had, used and exercised, or can have, use and exercise, in similar cases, and he shall give his opinion and advice whenever he shall be required by the general assembly, or either branch thereof, by the governor and council, or by the treasurer of either shore, on any matter or subject depending before them, or where the interest of the state may require.

"2. AND BE IT ENACTED, That there shall be appointed and commissioned, for each of the several judicial districts of this state, a person of sound legal knowledge, who shall be styled District Attorney of the judicial district for which he shall be commissioned, and who shall, previous to and during his acting as such, reside in the judicial district for which he shall be commissioned.

"3. AND BE IT ENACTED, That there shall be appointed and commissioned, for Baltimore city court, a person of sound legal knowledge, who shall be styled District Attorney of Baltimore City Court, and who shall, previous to and during his acting as such, reside in the city of Baltimore.

"4. AND BE IT ENACTED, That each and every district attorney to be appointed and commissioned in virtue of this act, shall, within the county courts of the judicial district, or within Baltimore city court, as the case may be, for which he shall be commissioned, have, use, exercise and perform, all and every the powers, authorities and duties, which the attorney general of this state, or his deputies, heretofore had, used, exercised and performed, and shall prosecute and defend, on the part of the state, all civil actions now depending, or which may hereafter be brought by or against the state, in the county courts of the judicial district for which he shall be commissioned, in the same manner, and with the like power and authority, as the attorney general, or his deputies heretofore could do and

perform, or were bound to do and perform in like cases." (emphasis in original).

It should be noted that the amendment caused to be identified by statute the powers and duties which the Attorney General had traditionally exercised and performed, including what had been the constitutional powers of the office; redistributed the duties among the Attorney General and the District Attorneys, and added the requirement that the Attorney General render opinions to the General Assembly, the Governor and Council, or the Treasurer. There matters stood until the enactment of Chapter 126 of the Laws of 1821, which provided for the appointment of an Attorney General by the Governor and returned to the Attorney General the powers conferred upon the District Attorneys in 1817. It continued, in Part IV, Section 1:

"... [I]t shall be the duty of the said attorney general, to prosecute and defend on the part of the state, all cases now depending, or which may hereafter be brought in, or removed to any of the counties of this state, or wherein the state shall or may be interested, in the same manner, as the attorney general heretofore was accustomed to do or could do; and he shall have, exercise and use all and every the powers and authorities in and relating to the same, as the attorney general heretofore had used and exercised, or can have, use and exercise in similar cases . . . ."

Once again, the common law powers of the office became statutory.

In 1851, Maryland adopted a new Constitution. Of particular significance are Article III, Section 32, " [n]o law shall be passed creating the office of attorney-general" and Article V, which provided for the election of a State's Attorney for each county and the City of Baltimore and continued, in Section 3:

"The State's attorney shall perform such duties

and receive such fees and commissions as are now prescribed by law for the attorney-general and his deputies, and such other duties, fees, and commissions as may hereafter be prescribed by law . . . ."

As a consequence, the common law powers of the Attorney General which had been delineated by Chapter 126 of the Laws of 1821 were transferred to and made the constitutional powers and duties of the State's Attorneys.

Just 13 years later, the Constitution of 1864 was adopted. Article V, Attorney-General, provided in Section 1 for an elected Attorney General and continued, in Section 3:

"It shall be the duty of the attorney-general to prosecute and defend, on the part of the State, all cases which at the time of his election and qualification, and which thereafter may be depending in the court of appeals, or in the Supreme Court of the United States, by or against the State, or wherein the State may be interested; and he shall give his opinion in writing whenever required by the general assembly, or either branch thereof, the governor, the comptroller, the treasurer, or any State's attorney, on any matter or subject depending before them, or either of them, and when required by the governor or the general assembly he shall aid any State's attorney in prosecuting any suit or action brought by the State in any court of the State; and he shall commence and prosecute or defend any suit or action in any of said courts, on the part of the State, which the general assembly or the governor, acting according to law, shall direct to be commenced, prosecuted, or defended . . . ." [4]

Section 7 of the same article provided for the election of a State's Attorney for each county and for the City of

---

**4.** The only other delineation of the authority and duties is set forth in Maryland Code (1957, 1971 Repl. Vol.) Art. 32A, § 2.

Baltimore. Section 9 described the duties of the State's Attorney:

"... [He] shall perform such duties and receive such fees and commissions as are now or may be hereafter prescribed by law. ..."

The phrase "now ... prescribed by law" referred to Maryland Code (1860) Art. 11, § 18 [5] as amended by Chapter 177 of the Laws of 1862 which gave the State's Attorney additional authority to "prosecute and defend, on the part of the State, all cases in which the State may be interested," including cases at the appellate level because, in 1862, the office of Attorney General did not exist.

Three years later, Maryland adopted the Constitution of 1867, its fourth and last. Article V, Attorney-General and State's Attorneys, in Section 3, describing the duties of the Attorney General, uses virtually the same language as that contained in the parallel provision of the 1864 Constitution.[6] The description of the duties of the State's Attorney, set out in Section 9, is identical to that contained in Article V, Section 9 of the earlier Constitution.[7]

In other words, the State's Attorneys of this State have had the constitutional duty and obligation since 1851 and through the succeeding Constitutions to prosecute and

---

**5.** This was a codification of Chapter 126 of the Laws of 1821.

**6.** Curiously, the 1867 Constitution substituted the phrase "appointment and qualification" in Section 3 for the phrase "election and qualification" in Section 3 of the 1864 Constitution. This language has not since been altered, although it is clear that in 1867 the Convention substituted the concept of an elected Attorney General for the original proposal that he be appointed by the Governor.

**7.** The text of the Constitutions of 1776, 1851, 1864 and 1867 quoted here is that set forth in Constitutional Revision Study Documents of the Constitutional Convention of Maryland (1968). An examination of the Debates and Proceedings of the 1851 Convention (Vol. 1, 415-26, 435; Vol. 2, 6-15) indicates that the substitution of the State's Attorneys for the Attorney General was dictated by the necessities of travel, see, P. Clarkson, R. Jett, Luther Martin of Maryland (1970) 54, 55, 194-95. Martin had been Attorney General from 1778 to 1805 and from 1818 to 1822. During his term of office he tried literally thousands of cases in all parts of the State, traveling by coach, wagon and on horseback. Debates and Proceedings of the 1864 Convention (Debates at 1458-75; Proceedings at 501, 754) based the reestablishment of the office of Attorney General on expenditures made since 1851 for the retention of special counsel, estimated to be between $24,000 and $40,000.

defend on the part of the State all cases in which the State may be interested, subject only to constitutional limitations.

Amendments to Constitution Art. V, §§ 3 and 9 since 1867 have been relatively few and, with one exception, of little significance. As regards the Attorney General, Chapter 663 of the Laws of 1912 provided that his salary should be such as the General Assembly may from time to time provide and prohibited the Governor from employing additional counsel unless authorized by the General Assembly. Chapter 10 of the Laws of 1966 added intermediate courts of appeal to those courts in which the Attorney General represents the State.

Section 9, which sets out the duties of the State's Attorneys, has been amended four times. Chapter 185 of the Laws of 1900; Chapter 624 of the Laws of 1912; and Chapter 177 of the Laws of 1924 all related to the salary to be paid the State's Attorney of Baltimore City and his deputy or deputies.

However, Chapter 490 of the Laws of 1943 bore the title:

> "AN ACT to propose an amendment to Section 9 of Article 5 of the Constitution of the State of Maryland, title 'Attorney-General and State's Attorneys', *relating to the salary of State's Attorneys*, and to provide for the submission of said amendment to the qualified voters of the State of Maryland for adoption or rejection." (emphasis supplied).

It is this amendment which is significant here because the text of Article V, § 9 in the Constitution of 1867, and in the three preceding amendments, had always read:

> "The State's Attorney shall perform such duties and receive such fees and commissions or salary, not exceeding three thousand dollars, *as are now or may hereafter be prescribed by law* . . . . (emphasis supplied).

Chapter 490 changed the language to read:

> "The State's Attorney shall perform such duties

and receive such salary *as shall be prescribed by law . . . .*" (emphasis supplied).

The appellants would have us read this as authorizing the General Assembly to strip the State's Attorney of his power and duty to prosecute criminal charges at the trial level. We think that the answer to this contention is that the draftsman of the provision was interested only in providing that the salary of a State's Attorney would be that set from time to time in the future. This would seem to be borne out not only by the title of the amendment but by the way in which it was placed on the ballot. The official ballot prepared for the General Election of 7 November 1944, published in the Baltimore "Sun" of 30 October 1944, submitted the question to the voters in this fashion:

"Question 4

Constitutional Amendment

Amendment to Section 9 of Article 5 of the Constitution of Maryland, title 'Attorney-General and State's Attorneys' relative to the salary of State's Attorneys."

In any event, the only statutory implementation of the constitutional grant is that contained in Maryland Code (1957, 1968 Repl. Vol.) Art. 10, § 34:

"The State's attorney for each county and the City of Baltimore shall, in such county or city, prosecute and defend, on the part of the State, all cases in which the State may be interested."

The purpose of this somewhat tedious litany has been to demonstrate that the office of our State's Attorney has evolved from the common law powers of England's Attorney General. The Constitution of 1851, which abolished the office of Attorney General, transferred the functions and common law and statutory powers and duties of that office to the State's Attorneys. In other words, that Constitution gave them, *inter alia,* the power and obligation to perform as well the duties now prescribed for the Attorney General.

In 1864, when the office of Attorney General was restored, there was a return to that office of a narrowly defined array of duties spelled out in the Constitution, leaving the constitutional powers and duties relating to criminal prosecutions at the trial level in the office of the State's Attorneys where they had been since 1851, and still are. At the appellate level, the recreated office of Attorney General was given the constitutional duty of representing the State in carefully defined areas. As previously mentioned, the Constitution of 1867 reaffirmed these constitutional duties without change. It seems clear to us that from and after the adoption of the Constitution of 1867, the General Assembly was without power to limit or modify the constitutional duties of either the State's Attorneys or the Attorney General by transferring the duties of either of these offices to another officer created by statute.

The Court of Special Appeals has recognized that the office of State's Attorney is a constitutional office, *State v. Aquilla*, 18 Md. App. 487, 493, 309 A. 2d 44, 47 (1973); *State v. Hunter*, 10 Md. App. 300, 305, 270 A. 2d 343, 345, *cert. denied*, 263 Md. 17, 278 A. 2d 608 (1970). In *Hunter*, 10 Md. App. at 305-06 n. 5, 270 A. 2d at 345-46 n. 5, that court traced the constitutional history of the office, and seems to have concluded, as do we, that the language of *Kilgour v. Evening Star Co.*, 96 Md. 16, 29, 53 A. 716, 719 (1902) (which held that a State's Attorney was without power to limit the expense of an inquest) and of *Hawkins v. State*, 81 Md. 306, 312-13, 32 A. 278, 279-80 (1895) (which held that the State's Attorney had no authority to institute *quo warranto* proceedings to oust a public official), to the extent that there was an implication that the office of State's Attorney, since it was unknown at common law, was possessed of no powers other than those prescribed by the Constitution and statutes of the State, must be reassessed because of the manner in which the office of State's Attorney evolved in Maryland.

*Kilgour* and *Hawkins*, both *supra*, reflected the general rule set out in 63 Am.Jur.2d *Prosecuting Attorneys* § 1 (1972):

"There has been created in the various states, at

the county or similar level, the office of prosecuting attorney, or, as it is termed in some jurisdictions, the office of district attorney, county attorney, state's attorney, public prosecutor, or the like . . . . *This office is of comparatively recent origin, and is solely a creature of the constitutions and statutes of the several states, with its powers and duties chiefly prescribed by such laws.*" (emphasis supplied; footnotes omitted).

63 Am.Jur.2d *Prosecuting Attorneys* § 22 continues: "The constitution or statutes creating the office of prosecuting attorney generally outline and define the ordinary powers and duties incident to that office. The powers and duties pertaining to the office may be enlarged or diminished, or wholly or partially transferred to other district or state officers, as the legislature may see fit, where they are not embedded in the constitution of the state. *Conversely, powers and duties of the office prescribed by the constitution may not be increased or diminished by the legislature, acting alone, except insofar as permitted by the constitution,*" citing *Hill County v. Sheppard,* 142 Tex. 358, 178 S.W.2d 261 (1944) (emphasis supplied; footnotes omitted).

To the same effect is 27 C.J.S. *District and Prosecuting Attorneys* § 1; § 10 (1959).

In Maryland, the powers of the State's Attorneys are nowhere specifically enumerated and defined, *Wells v. Price,* 183 Md. 443, 446, 37 A. 2d 888, 890 (1944), with the result that our State's Attorneys are vested with the broadest official discretion, *Brack v. Wells,* 184 Md. 86, 90, 40 A. 2d 319, 321 (1944). We are inclined to accept the conclusion reached by the Court of Special Appeals in the *Hunter* footnote, 10 Md. App. at 306-07, 270 A. 2d at 346:

"It would appear that in Maryland the powers and duties formerly vested in the common law office of Attorney General with respect to criminal

prosecutions at the trial level passed to the State's Attorney. While the State's Attorney was possessed of no common law powers of his own, we think it the obvious intention of the Legislature in broadly providing by statute that the State's Attorney 'prosecute and defend, on the part of the State, all cases in which the State may be interested' to invest that constitutional officer with the same powers respecting the prosecution of criminal cases as were formerly possessed by the Attorney General at common law."

Two of the prior decisions of this Court, *Woelfel v. State,* 177 Md. 494, 9 A. 2d 826 (1939) and *Beasley v. Ridout,* 94 Md. 641, 52 A. 61 (1902) relate at least tangentially to the problem. In *Woelfel,* our predecessors rejected a challenge to the validity of a statute which provided for the appointment of one or more trial magistrates for each county and severely limited the jurisdiction of justices of the peace theretofore appointed for each election district. In the course of its opinion, the Court noted,

"None of the old English traditions apply to the office of justice of the peace in this state. Here they are founded on statutes passed in pursuance of the Constitution, which does not indicate what their 'jurisdiction, duties and compensation' shall be, but leaves those incidents of the office to the Legislature." 177 Md. at 503.

*Beasley* involved the validity of a statute which took control of the Anne Arundel County jail from the sheriff and vested it in a Board of Visitors provided for in the Act, which stipulated that three of the board of five visitors were to be appointed by the judges of the Fifth Judicial Circuit. Of its own motion, the Court reversed an order which had been entered in a mandamus action, directing the sheriff to deliver his prisoners to the Board of Visitors. This was the holding in the case, a result reached because the imposition of nonjudicial duties on judges rendered the statute unconstitutional.

In *Beasley,* however, the Court noted at page 650 of 94 Md. :

"The sole ground of objection to the validity of the Act in question made in the appellant's brief, and the only one argued at the hearing, was that the office of Sheriff is a constitutional office; that the Sheriff was an officer of the common law, and that when the Constitution of 1776 provided for the election by the people of a Sheriff for each county, without prescribing in express terms the powers and duties of the office, it must have been intended that the office should carry with it *eo nomine,* all the duties, powers and privileges appertaining to it at common law; and that as the custody of the county jail, and the care of the prisoners therein, was the clear common law right of the Sheriff, the Legislature could not destroy or abridge that right, and confer it, in whole or in part, upon any other person designated by it — or by its delegated authority."

Taking this as a point of departure, the Court reviewed the cases which dealt with the question whether the holder of a constitutional office could be stripped by the Legislature of his common law powers, and concluded that it was bound by the prior case of *Mayor of Baltimore v. Board of Police,* 15 Md. 376 (1860), where, in a concurring opinion by Judge Le Grand, the Court had adopted the reasoning of *State v. Dews,* R. M. Charlton's Rep. 397 (Ga. 1835) that the office of sheriff was a ministerial one, the duties and powers of which could be changed by law. As a consequence, *Beasley* rejected the majority rule that the holder of a constitutional office who was vested with common law powers could not be deprived of them by legislative action, *Allor v. Wayne County,* 43 Mich. 76 (1880); *People v. Albertson,* 55 N. Y. 50 (1873); *State v. Brunst,* 26 Wis. 412 (1870); *People v. Keeler,* 29 Hun 175 (N.Y. Sup. Ct. 1883); *Warner v. People,* 2 Denio 272 (N.Y. Sup. Ct. 1845).

As was noted earlier, at least by 1821, the common law

powers of the Attorney General had become statutory, and upon the adoption of the Constitution of 1851, the common law and statutory powers and duties of the Attorney General had become the constitutional powers and duties of the State's Attorneys, which remained unchanged by the Constitutions of 1864 and 1867 except for the return of a part of those powers to the Attorney General in 1864.

The situation of the State's Attorneys, being discretionary officers vested with specific common law and statutory powers by the Constitution, is vastly different from that of the sheriffs. As a consequence, when the General Assembly, by statute, sought to divest the State's Attorneys of a portion of the common law powers conferred upon them by the Constitution, the legislative act was unconstitutional and invalid.

The rule which can be distilled from the cases is essentially this. If an office is created by the Constitution, and specific powers are granted or duties imposed by the Constitution, although additional powers may be granted by statute, the position can neither be abolished by statute nor reduced to impotence by the transfer of duties characteristic of the office to another office created by the legislature, 1 T. Cooley, Constitutional Limitations 562 n. 2 (8th ed. 1927), and see, Ex Parte Corliss, 16 N. D. 470, 114 N. W. 962 (1907); Thomas v. Owens, 4 Md. 189, 227 (1853). We regard this as but another facet of the principle of separation of powers, guaranteed by Article 8 of Maryland's Declaration of Rights:

> "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other." [8]

When a constitutional office is created with such powers and duties as "shall be prescribed by law," the courts have reached differing results.

---

**8.** For other examples *see* A. Vanderbilt, *The Doctrine of the Separation of Powers* 98-99 (1953); *see also* Crane v. Meginnis, 1 G. & J. 463 (1829) and C. Bond, *The Court of Appeals of Maryland* 133 (1928).

In *Shute v. Frohmiller,* 53 Ariz. 483, 90 P. 2d 998 (1939), the Supreme Court of Arizona concluded that resolution of the issue turns on the definition of the word "law" in "as prescribed by *law.*" Thus, if the word "law" is defined as meaning only "statutory law," "it follows necessarily, as most courts hold, that under constitutions containing similar provisions to those in Arizona, the attorney general is not a common-law officer . . . but is one whose powers and duties may be ascertained only by resort to the statutes." 53 Ariz. at 488, 90 P. 2d at 1001, *citing State v. Industrial Comm'n,* 172 Wis. 415, 179 N. W. 579 (1920); *State v. Seattle Gas & Elec. Co.,* 28 Wash. 488, 68 P. 946 (1902); *People v. Santa Clara Lumber Co.,* 55 Misc. 507, 106 N.Y.S. 624 (1907).

On the other hand, the court in *Shute* noted that other courts have construed the word "law" as meaning not only "statutory law" but also "common law." This is the holding of *Fergus v. Russel,* 270 Ill. 304, 110 N. E. 130 (1915) where the Illinois Supreme Court said: " [t]he common law is as much a part of the law of this state, where it has not been expressly abrogated by statute, and is included within the meaning of this phrase ['as may be prescribed by law']," 270 Ill. at 337, 110 N. E. at 143. The court then continued by saying: " [b]y our Constitution we created this office by the common-law designation of Attorney General and thus impressed it with all its common-law powers and duties." 270 Ill. at 342, 110 N.E. at 145. The result mandated, in the opinion of the court in *Fergus,* was that the legislature could not divest the Attorney General of any portion of his common law duty to represent the state before the courts.

The Arizona Supreme Court in *Shute* was able to distinguish *Fergus* in this manner: "the statement [of the *Fergus* court] was made by a court in a common-law state, one where that system was the rule of decision, unless expressly abrogated by statute, and in which the distinction between common law and equity procedure was still preserved." 53 Ariz. at 493, 90 P. 2d at 1003. This explanation of *Fergus* seems particularly applicable to Maryland and can be employed as a distinction between the two lines of authority. We recognize that the Arizona Supreme Court is

drawing a line between states which evolved from territories of the United States, which never truly adopted the common law of England, and states which have, from their inception, been subject to the English common law system. Under the Maryland Declaration of Rights of 1776, as successively reenacted, it is beyond doubt that Maryland embraced the common law. Thus, the result is that the General Assembly may not abrogate the common law powers of the Attorney General of Maryland since his powers were the powers of a common law Attorney General, having been constitutionally stated as those "prescribed by law." And, since the office of State's Attorney in Maryland, by the Constitution, has been vested with a portion of the common law powers of the Attorney General, the General Assembly is equally powerless to abrogate the State's Attorney's powers and duties.

Surely, language in *Woelfel v. State, supra,* 177 Md. 494, 9 A. 2d 826 supports this conclusion: "[n]one of the old English traditions apply to the office of justice of the peace in this State," 177 Md. at 503, 9 A. 2d at 829. The logical inference is that had these traditions been applicable, the General Assembly would have been barred from altering the duties of the justices of the peace. In fact, *Hawkins v. State, supra,* 81 Md. 306, 32 A. 278, is demonstrably not to the contrary. In *Hawkins,* the Court made much of the fact that the writ of *quo warranto* was not within the powers of the Attorney General in England at the time of the Revolution. Thus, when the office of State's Attorney was created by the Constitution of 1851, the State's Attorney, being vested with the powers previously exercised by the Attorney General, did not have the power to issue the writ either. *Hawkins,* however, while suggesting that the power to issue a *quo warranto* writ could have been granted by the General Assembly, nowhere suggests that, had the power to issue the writ existed at common law, the General Assembly could have taken that power away.

We do not find persuasive the contention that the duties imposed on the Special Prosecutor are concurrent with the powers of the State's Attorneys. The simple fact is that the Special Prosecutor's power to initiate an investigation and to

commence prosecution if a State's Attorney does not act is a clear invasion of the State's Attorney's most awesome discretionary power: to determine whether or not to prosecute. Furthermore, the Special Prosecutor is empowered by the Act to represent the State in any appeal or post conviction proceeding resulting from his prosecutions. Such power is an invasion on the constitutional duty imposed upon the Attorney General. Moreover, in each instance the power is transferred from what has traditionally been an elected official to an appointed official. Praiseworthy though the purpose of the General Assembly might have been in enacting the legislation, the result can only be validly achieved by a constitutional amendment.

Long ago, Chief Judge Jeremiah Townley Chase, for the General Court, set this matter at rest in *Whittington v. Polk*, 1 H. & J. 236, 242-43 (1802):

> "The Bill of Rights and form of government compose the Constitution of Maryland, and is a compact made by the people of Maryland among themselves, through the agency of a convention selected and appointed for that important purpose. This compact is founded on the principle that the people being the source of power, all government of right originates from them. In this compact the people have distributed the powers of government in such manner as they thought would best conduce to the promotion of the general happiness; and for the attainment of that all-important object have, among other provisions, judiciously deposited the legislative, judicial and executive, in separate and distinct hands, subjecting the functionaries of these powers to such limitations and restrictions as they thought fit to prescribe. The Legislature, being the creature of the Constitution, and acting within a circumscribed sphere, is not omnipotent, and cannot rightfully exercise any power, but that which is derived from that instrument.

> "The Constitution having set certain limits or landmarks to the power of the Legislature, whenever they exceed them they act without authority, and such acts are mere nullities, not being done in pursuance of power delegated them: Hence the necessity of some power under the Constitution to restrict the Acts of the Legislature within the limits defined by the Constitution." [9]

It follows from the conclusion which we reach that the declaratory decree entered by the trial court will be modified to read as follows, and that as thus modified, will be affirmed:

> The within cause for Declaratory Decree having come on for hearing on the motions for summary judgment of plaintiffs and defendants, arguments of counsel were heard, briefs were received, and the proceedings were read and duly considered.
>
> WHEREUPON, it is this 27th day of August 1975 by the Circuit Court for Anne Arundel County, in Equity, Declared that Chapter 255 of the Acts of the Legislature of the 1975 Session, be and the same is hereby declared to be unconstitutional and void in its entirety.

It is further ordered that the costs of these proceedings be divided between the plaintiffs and the defendants.

> *Decree modified as set forth in the foregoing opinion, and as modified, affirmed; mandate to issue forthwith; costs of this appeal to be paid by appellants.*

---

**9.** Interestingly, this decision antedates by one year the landmark decision by Chief Justice Marshall for the United States Supreme Court in Marbury v. Madison, 5 U. S. (1 Cranch) 137 (1803).

*APPENDIX*

Chapter 255 of the Laws of 1975 added new sections 33A through 33F to Maryland Code (1957, 1968 Repl. Vol., 1974 Cum. Supp.) Article 10 and repealed former section 33 and re-enacted it as section 34:

"33A. CREATED; QUALIFICATIONS: TERM: SALARY

(A) THE OFFICE OF STATE PROSECUTOR IS CREATED AS AN INDEPENDENT UNIT IN THE EXECUTIVE BRANCH AND FOR AD-MINISTRATIVE PURPOSES ONLY IS WITH-IN THE OFFICE OF THE ATTORNEY GEN-ERAL. THE STATE PROSECUTOR SHALL BE NOMINATED BY THE STATE PROSECUTOR SELECTION AND DISABILITIES COMMISSION AND APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE FOR A TERM OF SIX YEARS AND UNTIL HIS SUCCESSOR IS APPOINTED AND QUALIFIES.

(B) A PERSON IS NOT ELIGIBLE TO BE STATE PROSECUTOR UNLESS, AT THE TIME OF HIS APPOINTMENT, HE HAS ACTIVELY AND LAWFULLY PRACTICED LAW IN MARYLAND FOR AT LEAST FIVE YEARS.

(C) THE STATE PROSECUTOR SHALL RECEIVE THE SALARY PROVIDED IN THE STATE BUDGET, BUT NOT LESS THAN THE SALARY OF A JUDGE OF THE CIRCUIT COURT.

(D) THE STATE PROSECUTOR MAY BE REMOVED FROM OFFICE BY THE GOVERNOR, BUT ONLY UPON THE RECOMMENDATION OF THE STATE PROSECUTOR SELECTION AND DISABILITIES COMMISSION, FOR MISCON-DUCT IN OFFICE, PERSISTENT FAILURE TO PERFORM THE DUTIES OF HIS OFFICE, OR CONDUCT PREJUDICIAL TO THE PROPER ADMINISTRATION OF JUSTICE.

"33B. DUTIES

(A) THE STATE PROSECUTOR HAS THE DUTIES, POWERS, AND RESPONSIBILITIES SET FORTH IN THIS SECTION.

(B) EXCEPT WITH RESPECT TO OFFENSES ALLEGED TO BE COMMITTED BY HIMSELF OR MEMBERS OF HIS STAFF, HE MAY, ON HIS OWN INITIATIVE, OR AT THE REQUEST OF THE GOVERNOR, THE GENERAL ASSEMBLY, THE ATTORNEY GENERAL, OR A STATE'S ATTORNEY, INVESTIGATE:

(1) CRIMINAL OFFENSES UNDER THE STATE ELECTION LAWS;

(2) CRIMINAL OFFENSES UNDER THE STATE CONFLICT OF INTEREST LAWS;

(3) VIOLATIONS OF THE STATE BRIBERY LAWS IN WHICH AN OFFICIAL OR EMPLOYEE OF THE STATE OR OF A POLITICAL SUBDIVISION OF THE STATE WAS THE OFFEROR OR OFFEREE, OR INTENDED OFFEROR OR OFFEREE, OF A BRIBE; AND

(4) OFFENSES CONSTITUTING CRIMINAL MALFEASANCE, MISFEASANCE, OR NON-FEASANCE IN OFFICE COMMITTED BY AN OFFICER OF THE STATE OR OF A POLITICAL SUBDIVISION OF THE STATE. ANY PERSON WHO IS ADVISED BY THE STATE PROSECUTOR THAT HE IS UNDER IN-VESTIGATION MAY, AT HIS DISCRETION, RELEASE THIS INFORMATION INCLUDING ANY RESULTS PERTAINING TO HIM TO THE PUBLIC.

(C) AT THE REQUEST OF EITHER THE GOVERNOR, ATTORNEY GENERAL, GEN-ERAL ASSEMBLY OR A STATE'S ATTORNEY, THE STATE PROSECUTOR MAY INVESTI-GATE CRIMINAL ACTIVITY CONDUCTED OR COMMITTED PARTLY IN THIS STATE

AND PARTLY IN ANOTHER JURISDICTION, OR WHICH IS CONDUCTED OR COMMITTED IN MORE THAN ONE POLITICAL SUBDIVISION OF THE STATE.

(D) IF THE STATE PROSECUTOR FINDS THAT AN ALLEGED VIOLATION OF THE CRIMINAL LAW SET FORTH IN SUBSECTIONS (B) OR (C) HAS OCCURRED, HE SHALL MAKE A CONFIDENTIAL REPORT OF HIS FINDINGS TOGETHER WITH ANY RECOMMENDATIONS FOR PROSECUTION TO THE STATE'S ATTORNEY HAVING JURISDICTION TO PROSECUTE THE MATTER.

(E) IF THE STATE'S ATTORNEY WITHIN 45 DAYS AFTER RECEIPT OF THE STATE PROSECUTOR'S FINDINGS AND RECOMMENDATIONS FAILS TO FILE CHARGES AND COMMENCE PROSECUTION IN ACCORDANCE WITH THE RECOMMENDATIONS, THE STATE PROSECUTOR MAY PROSECUTE THOSE CRIMINAL OFFENSES AS SET FORTH IN HIS INVESTIGATIVE REPORT AND RECOMMENDATIONS.

(F) IF THE STATE PROSECUTOR FINDS THAT NO VIOLATIONS OF CRIMINAL LAW HAVE OCCURRED OR HE DOES NOT RECOMMEND PROSECUTION, HE SHALL REPORT HIS FINDINGS TO THE PERSON REQUESTING THE INVESTIGATION. IF THE GENERAL ASSEMBLY REQUESTED THE INVESTIGATION, THE REPORT SHALL BE MADE TO THE PRESIDENT OF THE SENATE AND THE SPEAKER OF THE HOUSE OF DELEGATES. IN ADDITION, THE REPORT SHALL BE MADE AVAILABLE AS SOON AS POSSIBLE TO THE PUBLIC AT THE REQUEST OF THE PERSON WHO WAS THE SUBJECT OF THE INVESTIGATION.

(G) IN THE INVESTIGATION OF ANY CASE AS PROVIDED IN SUBSECTION (B) OR (C), AND THE PROSECUTION OF ANY CASE AS PROVIDED IN SUBSECTION (E), THE STATE PROSECUTOR HAS ALL THE POWERS OF A STATE'S ATTORNEY. HOWEVER, HE MAY NOT CHARGE A PERSON BY WAY OF INFORMATION BUT MAY PROCEED TO TRIAL ONLY UPON INDICTMENT BY A GRAND JURY WITHIN WHOSE JURISDICTION THE OFFENSE OCCURRED.

(H) THE TRIAL OF ALL CASES PROSECUTED BY THE STATE PROSECUTOR PURSUANT TO SUBSECTION (E) SHALL TAKE PLACE BEFORE THE CIRCUIT COURT WITHIN WHOSE JURISDICTION THE OFFENSE WAS COMMITTED IN WHOLE OR IN PART, SUBJECT TO REMOVAL IN ACCORDANCE WITH THE MARYLAND RULES.

(I) HE SHALL, BEGINNING WITH THE FISCAL YEAR 1977, PREPARE AND SUBMIT TO THE GOVERNOR, AFTER REVIEW AND COMMENT BY THE ATTORNEY GENERAL, A CONSOLIDATED BUDGET FOR HIS OFFICE.

(J) HE SHALL SUBMIT AN ANNUAL REPORT TO THE GOVERNOR AND THE GENERAL ASSEMBLY ON THE ACTIVITIES OF HIS OFFICE WHICH ARE NOT CONFIDENTIAL.

(K) HE AND THE ATTORNEYS ON HIS STAFF SHALL DEVOTE FULL TIME TO THEIR OFFICIAL DUTIES AND SHALL NOT ENGAGE IN THE PRIVATE PRACTICE OF LAW.

(L) HE SHALL REPRESENT THE STATE IN ALL APPEALS AND POST CONVICTION PROCEEDINGS ARISING FROM PROSECUTIONS CONDUCTED BY HIM. HOWEVER, HE MAY REQUEST THE ASSISTANCE OF THE ATTORNEY GENERAL IN ANY SUCH APPEAL OR COLLATERAL PROCEEDING.

(M) HE SHALL MEET AND CONFER REGULARLY WITH THE VARIOUS STATE'S AT-TORNEYS, AND THE ATTORNEY GENERAL.

"33C. STAFF.

THE STATE PROSECUTOR MAY APPOINT AND EMPLOY THE PROFESSIONAL, INVES-TIGATIVE, AND CLERICAL STAFF PROVIDED IN THE STATE BUDGET. TO THE EXTENT PRACTICABLE, THE STATE PROSECUTOR SHALL UTILIZE THE SERVICES AND PERSON-NEL OF THE MARYLAND STATE POLICE AND OTHER ESTABLISHED STATE AND LAW EN-FORCEMENT AGENCIES. THESE AGENCIES SHALL, TO THE EXTENT FEASIBLE, COOP-ERATE WITH THE STATE PROSECUTOR AND HIS STAFF.

\* \* \*

STATE PROSECUTOR SELECTION AND
DISABILITIES COMMISSION

"33D. CREATION; COMPOSITION

(A) THE STATE PROSECUTOR SELECTION AND DISABILITIES COMMISSION IS CRE-ATED. IT CONSISTS OF THE CHIEF JUDGE OF THE COURT OF APPEALS, THE CHIEF JUDGE OF THE COURT OF SPECIAL APPEALS, THE CHIEF JUDGE OF THE DISTRICT COURT, THE ATTORNEY GENERAL, ALL EX OFFICIO, BUT WITH POWER TO VOTE, AND FIVE PERSONS APPOINTED BY THE GOVERNOR, AS FOLLOWS:

(1) THREE PERSONS SHALL BE THE NOMINEES SUBMITTED JOINTLY BY THE PRESIDENT OF THE SENATE AND BY THE SPEAKER OF THE HOUSE OF DELEGATES. THESE PERSONS SHALL NOT BE MEMBERS OF THE GENERAL ASSEMBLY, LAWYERS OR FULL-TIME STATE EMPLOYEES.

(2) ONE PERSON SHALL BE THE NOMINEE SUBMITTED BY THE BOARD OF GOVERNORS OF THE MARYLAND STATE BAR ASSOCIATION, INCORPORATED. THIS PERSON SHALL BE A LAWYER ADMITTED TO PRACTICE LAW IN MARYLAND.

(3) ONE PERSON SHALL BE THE NOMINEE SUBMITTED BY THE GOVERNING BOARD OF THE MARYLAND STATE'S ATTORNEYS ASSOCIATION, INCORPORATED, OR ITS SUCCESSOR. THIS PERSON SHALL BE AN INCUMBENT STATE'S ATTORNEY.

(B) THE TERMS OF THE APPOINTED MEMBERS ARE FOUR YEARS AND UNTIL THEIR SUCCESSORS ARE APPOINTED AND QUALIFY. HOWEVER, OF THE INITIAL APPOINTEES, TWO SHALL HAVE INITIAL TERMS OF FOUR YEARS, TWO SHALL HAVE INITIAL TERMS OF THREE YEARS, TWO SHALL HAVE INITIAL TERMS OF TWO YEARS, AND THREE SHALL HAVE AN INITIAL TERM OF ONE YEAR. MEMBERS ARE ELIGIBLE FOR REAPPOINTMENT.

(C) THE MEMBERS OF THE COMMISSION SHALL NOT RECEIVE COMPENSATION BUT SHALL BE REIMBURSED FOR THEIR REASONABLE EXPENSES INCURRED IN THE PERFORMANCE OF THEIR DUTIES, AS PROVIDED IN THE STATE BUDGET.

"33E. DUTIES; NOMINATION OF STATE PROSECUTOR

(A) UPON NOTIFICATION BY THE GOVERNOR THAT A VACANCY EXISTS OR IS ABOUT TO OCCUR IN THE OFFICE OF THE STATE PROSECUTOR, THE COMMISSION SHALL SEEK AND REVIEW APPLICATIONS OF PROPOSED NOMINEES FOR THE POSITION. IT SHALL NOTIFY THE MARYLAND STATE BAR ASSOCIATION, INCOR-

PORATED, OF THE VACANCY, AND SHALL REQUEST RECOMMENDATIONS FROM THAT ASSOCIATION. IT SHALL ALSO SEEK RECOMMENDATIONS FROM INTERESTED CITIZENS, AND GROUPS AND FROM ITS OWN MEMBERS.

(B) THE COMMISSION SHALL EVALUATE EACH APPLICANT, AND SHALL SELECT AND NOMINATE TO THE GOVERNOR THE NAME OF THE PERSON IT FINDS TO BE LEGALLY AND PROFESSIONALLY QUALIFIED BY A VOTE OF A MAJORITY OF THE ENTIRE AUTHORIZED MEMBERSHIP OF THE COMMISSION, TAKEN BY SECRET BALLOT.

(C) THE COMMISSION SHALL REPORT TO THE GOVERNOR, IN WRITING, THE NAME OF THE PERSON IT NOMINATES. THE REPORT SHALL BE SUBMITTED WITHIN 70 DAYS AFTER NOTIFICATION THAT A VACANCY EXISTS OR IS ABOUT TO OCCUR.

(D) THE GOVERNOR MAY REJECT THE NOMINEE FOR CAUSE, IN WHICH EVENT THE COMMISSION SHALL SUBMIT ANOTHER NOMINEE. THE GOVERNOR, IF HE REJECT THE NOMINEE, SHALL STATE IN WRITING TO THE COMMISSION THE REASONS FOR HIS REJECTION. THIS STATEMENT IS CONFIDENTIAL, SECRET, AND PRIVILEGED; HOWEVER, THE COMMISSION MAY MAKE IT PUBLIC.

"33F. DUTIES; DISCIPLINE AND REPRIMAND OF STATE PROSECUTOR

(A) THE COMMISSION MAY REPRIMAND OR RECOMMEND TO THE GOVERNOR THE REMOVAL FROM OFFICE OF THE STATE PROSECUTOR IF AFTER A HEARING, IT FINDS THAT HE IS GUILTY OF MISCONDUCT IN OFFICE, PERSISTENT FAILURE TO PERFORM THE DUTIES OF HIS OFFICE, OR

CONDUCT PREJUDICIAL TO THE PROPER ADMINISTRATION OF JUSTICE.

(B) THE PROCEEDINGS, TESTIMONY, AND OTHER EVIDENCE BEFORE THE COMMISSION ARE CONFIDENTIAL AND PRIVILEGED. HOWEVER, THE COMMISSION, UPON TAKING FINAL ACTION IN THE MATTER. MAY MAKE ITS ORDER AND THE PROCEEDINGS, TESTIMONY AND OTHER EVIDENCE PUBLIC.

(C) THE COMMISSION IS EMPOWERED TO INVESTIGATE ALLEGATIONS MADE AGAINST THE STATE PROSECUTOR WHICH, IF TRUE, MAY WARRANT HIS REMOVAL OR DISCIPLINE, UPON COMPLAINT OR UPON ITS OWN MOTION. IT MAY CONDUCT HEARINGS, ADMINISTER OATHS AND AFFIRMATIONS, ISSUE PROCESS TO COMPEL THE ATTENDANCE OF WITNESSES AND THE PRODUCTION OF EVIDENCE, AND REQUIRE PERSONS TO TESTIFY AND PRODUCE EVIDENCE BY GRANTING THEM IMMUNITY FROM PROSECUTION, PENALTY, OR FORFEITURE.

\* \* \*

"34.

The State's Attorney for each county and the City of Baltimore shall, in such county or city, prosecute and defend, on the part of the State, all cases in which the State may be interested, SUBJECT TO THE PROVISIONS OF SECTION 33B OF THIS ARTICLE.

SECTION 5. AND BE IT FURTHER ENACTED, That this Act shall take effect July 1, 1975."

*Levine, J., dissenting:*

I respectfully dissent.

Article V, section 9 of the Constitution of Maryland, in providing for the office of the State's Attorney, states that

" [t]he State's Attorney shall perform such duties and receive such salary as shall be prescribed by law . . . ." It is the opinion of the majority that the effect of this constitutional provision is to vest in the State's Attorney all of the powers and duties possessed by the English Attorney General at common law with respect to the prosecution of cases, so that those powers and duties may not be diminished by the Legislature. The majority's position is not only inconsistent with prior decisions of this Court, but is also contrary to the position taken in an overwhelming majority of jurisdictions faced with a similar issue.

As created by the General Assembly in the State Prosecutor Act, Chapter 255 of the Laws of 1975, the office of State Prosecutor, an appointive and independent office in the executive branch, is empowered to investigate possible violations of certain laws of a politically sensitive nature and to commence prosecution of alleged violations upon failure of the State's Attorney to prosecute. Concurrent power with the State's Attorney to prosecute a certain class of crimes is thus given to the State Prosecutor. I agree with the majority that the effect of giving such concurrent power to the State Prosecutor is to transfer some power from the State's Attorney to the State Prosecutor, that is, discretion to determine whether prosecution should be commenced with respect to that class of crimes enumerated in the Act. *See Ewell v. State*, 207 Md. 288, 296, 114 A. 2d 66 (1955); *Brack v. Wells*, 184 Md. 86, 90, 40 A. 2d 319, 156 A.L.R. 324 (1944). I do not agree, however, that the Constitution prevents such a transfer of power.

A basic problem with the position of the majority that the State's Attorney is vested, under the broad language of the Constitution, with the powers of the common law Attorney General is that the framers did not use the common law designation, but instead employed a title without common law significance.

The majority cites the history of the various constitutional and statutory provisions in Maryland pertaining to the offices of State's Attorney and Attorney General to show that the office of State's Attorney was created out of the

office of Attorney General, and, since the Attorney General
was a common law officer, the majority concludes that the
State's Attorney is therefore vested with the common law
powers and duties of the Attorney General. But while it may
be true that the State's Attorney now performs many of the
duties previously performed by the Attorney General, the
fact remains that the office of State's Attorney was not
itself a common law office. Consequently, the inference
espoused by the majority, that the framers, while using the
term "State's Attorney," meant to vest in the office the
powers and duties of the Attorney General at common law,
is weak at best. Thus, in *Hawkins v. State*, 81 Md. 306, 313,
32 A. 278 (1895), this Court held that State's Attorneys do
not possess powers by virtue of the common law because
"they are unknown to it."

This is not to say that the powers and duties of a common
law office are of no significance when the common law term
is employed in a constitutional provision, though there is
authority to the effect that use of the common law
designation of an office in a constitution, without reference
to the duties of that office, does not imply that the office is
clothed with common law powers and duties. *See Baltimore
v. State*, 15 Md. 376, 468, 74 Am. Dec. 572 (1860); *State v.
Seattle Gas & Elec. Co.*, 28 Wash. 488, 68 P. 946, 949 (1902).
Here the common law designation is not used and, as will be
discussed at length below, reference is made to the duties of
the office of State's Attorney. Nor is it at all clear what the
duties of the English Attorney General were at common law.
*Fergus v. Russel*, 270 Ill. 304, 110 N. E. 130, 149 (1915)
(dissenting opinion). Perhaps the most that can be said in
this case is that the common law duties of the predecessor
office might aid in interpreting the legislative and
constitutional grants of power.

But, as suggested above, a more fundamental problem
with the position of the majority is that the Constitution
does make reference to the duties of the State's Attorney.
Section 9 of Article V provides that the State's Attorney
"shall perform such duties . . . as shall be provided by law."
While it is widely held that when an office known at

common law is created by constitutional provision, but the constitution is silent as to the powers and duties of the office, constitutional duties of the common law office may be implied, *Yelle v. Bishop,* 55 Wash. 2d 286, 347 P. 2d 1081, 1086 (1959); *Shute v. Frohmiller,* 53 Ariz. 483, 90 P. 2d 998, 1000 (1939), such an inference is negated when the constitution seeks to define the duties of the office or authorizes the Legislature to do so.

Of concern, then, is the effect of the phrase "as shall be provided by law" in Article V. Only two or, at best, three jurisdictions have been found which hold that the effect of this or similar language in connection with a common law office vests in the office, and thus prevents the Legislature from diminishing, the powers of that office at common law. *See Fergus v. Russel, supra; Ex parte Corliss,* 16 N. D. 470, 114 N. W. 962, 965 (1907); *cf. Wright v. Callahan,* 61 Idaho 167, 99 P. 2d 961, 965-66 (1940) (prior statutory office); *but see Padgett v. Williams,* 82 Idaho 28, 348 P. 2d 944, 948 (1960). The overwhelming majority of jurisdictions, however, have held that language such as that used in Article V authorizes the Legislature fully to prescribe the duties of the office, to the extent of diminishing those duties if it sees fit. *See Johnson v. Commonwealth,*[1] 291 Ky. 829, 165 S.W.2d 820, 826-27 (1942), and *Shute v. Frohmiller, supra,* 90 P. 2d at 1001-02, and the cases collected therein.

This Court faced the very same issue with respect to a common law officer in *Beasley v. Ridout,* 94 Md. 641, 52 A. 61 (1902). There, a 1901 statute transferring supervision and control of the Anne Arundel County jail from the Sheriff to a Board of Visitors was challenged as encroaching on vested powers of a constitutional office. The constitution at that time provided that the Sheriff "shall exercise such powers and perform such duties as now or may hereafter be fixed by law." Upon appointment, the Board of Visitors demanded and was refused custody of the jail by the Sheriff; it then

---

1. The court in *Johnson* found 27 jurisdictions with constitutional provisions dealing with the office of Attorney General and containing language similar to that contained in Article V, section 9. Only two jurisdictions, Illinois and North Dakota, were found where the result was the same as that reached by the majority here.

brought a petition for mandamus. The Sheriff argued that his was a constitutional office and because the office of Sheriff was one known at common law, all of its duties and powers at common law were vested in the office by the Constitution and the Legislature could not limit these powers or transfer them to another officer. The Court rejected the Sheriff's argument, holding that the clear effect of the language of the Constitution vested complete control over the duties of the office in the Legislature:

> "Under the present Constitution, the powers and duties which the Sheriff is to exercise and perform are not such *alone* as were then determined by the common law, but were those — save and except as then or thereafter fixed by law, whether the effect of such law was to repeal, enlarge, or limit those powers. The language could not have been more explicit or plainer in meaning if the Constitution said 'The powers and duties of Sheriffs shall be such as now are or may hereafter be conferred and prescribed by legislative enactment.' " 94 Md. at 656-57 (emphasis in original).

Thus, the Court in *Beasley* upheld the transfer of power from the Sheriff to the Board of Visitors, though it concluded sua sponte that the act in question unconstitutionally imposed non-judicial duties upon the judges who were required to appoint the members of the Board. I understand the majority to attempt to distinguish *Beasley* by attributing to that opinion a reliance on *Baltimore v. State, supra,* and its rationale. There, the Court, in sustaining another statute having the effect of transferring common law powers of the Sheriff to another officer, adopted what became the minority view that in the case of a constitutional office of a ministerial nature, vested with common law powers and duties by reason of the creation of the office without reference to its powers, such powers and duties could be diminished by statute.

The *Beasley* Court not only did not rely on *Baltimore v. State,* but to the contrary expressed doubt as to the efficacy

of its reasoning in deference to the majority view. 94 Md. at 656. Instead, what *Beasley* held was that as a result of the addition of language to that section of the Constitution creating the office of Sheriff, to the effect that the Sheriff shall "exercise such powers and perform such duties as now or may hereafter be fixed by law," the common law powers of the Sheriff were no longer even arguably vested in that office by the Constitution. It should, perhaps, be noted that the above quoted language was added to the Constitution just four years after the decision in *Baltimore v. State*, causing the *Beasley* Court to speculate that perhaps the language was added specifically to incorporate the holding in *Baltimore v. State* and to end any doubt as to the result. 94 Md. at 657.

The interpretation in *Beasley* of the language at issue has also been employed by this Court in the case of a Justice of the Peace, *Woelfel v. State*, 177 Md. 494, 9 A. 2d 826 (1939), and in the case of a County Commissioner, *Prince George's Co. v. Mitchell*, 97 Md. 330, 336-37, 55 A. 673 (1903). So also has the Court held with respect to the Attorney General that he possesses no other powers than those prescribed by the Constitution or by statute, and possesses no powers by the common law of England. *Wells v. Price*, 183 Md. 443, 446, 37 A. 2d 888 (1944); *Kilgour v. Evening Star Co.*, 96 Md. 16, 29, 53 A. 716 (1902). The majority sub silentio overrules these cases as well as *Beasley*.

The legislative history expounded at length by the majority lends further support to the *Beasley* interpretation. The constitution of 1776, Article XLVIII, created the office of Attorney General without referring to the duties of that office, thus arguably vesting in that office the powers of the common law Attorney General. The 1816 constitutional amendment, however, "abrogated, annulled, and made void . . . all and every part of the constitution and form of government of this state, which relates to the attorney general"; the amendment further provided that "the duties and services, now provided by law to be done and performed by the attorney general, shall be done and performed by such persons, and in such manner as the general assembly of

Maryland shall hereafter direct." Thus was complete discretion to deal with the powers and duties of the Attorney General clearly vested in the Legislature. It was against this background that in 1851, the office of State's Attorney was created with such duties "as may hereafter be prescribed by law," and reestablished in the 1864 and 1867 Constitutions with such duties "as are now or may hereafter be prescribed by law."

The majority is correct only in its inference that the 1943 amendment, which changed the language of Article V, section 9 to provide that the State's Attorney "shall perform such duties . . . as shall be prescribed by law," had no effect upon the state of the office. I submit that the more precise language of the 1943 amendment only serves to clarify what was the law prior to 1943: that the Legislature was empowered to modify the common law powers of the office of State's Attorney.

In my view, it is unnecessary to reach the question whether the Legislature has the power to strip the office of State's Attorney of all of its powers and transfer them to another, perhaps appointive officer. *Woelfel v. State, supra,* 177 Md. at 502-03, and *Beasley, supra,* 94 Md. at 656, indicate in *dicta* that the Legislature possesses such power. *See Shute v. Frohmiller, supra,* 90 P. 2d at 1004. The Kentucky Court of Appeals, however, in *Johnson v. Commonwealth, supra,* 165 S.W.2d at 829, expressed the view that to so strip the office of its powers that it be "left without substantial duties, responsibilities and rights" would violate the constitution. Suffice it to say, the State Prosecutor Act has no such effect.

I would hold that nothing in Article V, section 9 of the Constitution prevents the Legislature from transferring the necessary power from the State's Attorney to the State Prosecutor to enable the latter to initiate prosecutions in the enumerated class of cases. Judge Eldridge authorizes me to state that he concurs in the views expressed herein.